**COASTWISE PACKET CO., Inc.,**
**Plaintiff,**

v.

**UNITED STATES of America.**

**Civ. A. No. 66–490.**

United States District Court
D. Massachusetts.

Jan. 16, 1968.

Daniel F. Featherston, Boston, Mass., for plaintiff.

Paul F. Markham, U. S. Atty., Edward J. Lee, Asst. U. S. Atty., Robert E. Easton, Dept. of Justice, for defendant.

OPINION

CAFFREY, District Judge.

This is a civil action brought under the Federal Tort Claims Act, 28 U.S.C.A. 1346(b), 2671 et seq. The plaintiff is a Massachusetts business corporation with a usual place of business in Vineyard Haven and is owner of the 108-foot clipper schooner SHENANDOAH. Plaintiff operates the vessel on one-week passenger cruises during the summer months out of her home port of Vineyard Haven.

Robert S. Douglas, a resident of Vineyard Haven, is sole stockholder and promoter of plaintiff. He is the Master of the SHENANDOAH, which was designed and built under his supervision.

In early 1962 Douglas made inquiry of the United States Coast Guard about that agency's concern regarding the construction and operation of passenger-carrying vessels on the high seas. He was informed on May 4, 1962 by the U. S. Coast Guard officer in charge of marine inspection at Portland, Maine (hereinafter OCMI Portland) that no advice regarding the construction or operation of a proposed passenger-carrying sailing vessel could be given until her complete plans were submitted. Later in 1962, Douglas obtained from the Smithsonian Institution in Washington, D. C. a copy of the plans of a Nineteenth Century Coast Guard revenue cutter, the JOE LANE, and the lines plan of a modified version of the JOE LANE was made bearing the date December 3, 1962.

On April 29, 1963, Douglas submitted the construction plans, dated April 24, of the modified version of the JOE LANE to OCMI Portland for approval. OCMI Portland refused approval and directed Douglas to submit the plans to OCMI Boston, which he did on April 30, 1963. Thereafter the matter was given considerable study by the Coast Guard, voluminous correspondence passed among various departments of the Coast Guard and between the Coast Guard and the plaintiff, studies and tests were made

by the Coast Guard and its expert consultants, modifications of the original design of the SHENENDOAH were recommended and made, and on February 24, 1965 the Coast Guard notified plaintiff that the SHENENDOAH was certifiable for passenger-carrying service.

Plaintiff's complaint is in three counts. The first count contains sixty paragraphs. Count Two, which added four more paragraphs, was dismissed by stipulation of the parties. Count Three, a cause of action for alleged violation of the due process clause of the Fifth Amendment, adds four more paragraphs. While the complaint as drawn is vulnerable to a motion to strike for noncompliance with Rule 8(a) (2), Federal Rules of Civil Procedure, the Government has apparently elected to waive this deficiency and go to the heart of the matter by filing a motion for summary judgment. A stipulation has been filed by the parties to the effect that all facts necessary to a ruling on summary judgment on the question of liability are before the Court for purposes of this motion, i. e., there is no contention that summary judgment should be denied because of the presence of an issue of fact lurking among the pleadings which issue of fact is pertinent to the issue of liability.

The observation on page 19 of the Government's brief, to the effect that "plaintiff's complaint, once the substance of his claim is unearthed from its surrounding quagmire of allegations of fact and conclusions of law, states a claim based upon misrepresentation" is not without foundation. Brushing aside the prolix recitals of evidence in the complaint and its many conclusions of law, plaintiff in substance charges in Count One of the complaint that the United States Coast Guard falsely led it to believe that its vessel would be certified to operate in coastal trade as a passenger-carrying vessel during the summer of 1964. In its brief plaintiff seeks to avoid the legal consequences of this fact by asserting that its claim is founded on negligence rather than on misrepresentation. Count Three of the complaint alleges an illegal taking of plaintiff's property without due process of law, in violation of the Fifth Amendment of the Constitution of the United States.

1. Plaintiff's claim that the Coast Guard was negligent in its conduct of the inspecting of the construction plans and in the testing of the stability of the vessel does not give rise to an enforceable cause of action because it is inescapably tied in with the contention that the Coast Guard misrepesented to plaintiff that the vessel would be certified and thus available to plaintiff for use in the passenger-carrying trade in the summer of 1964. The complaint in fact alleges that on the strength of these allegedly false representations plaintiff engaged in a widespread national and international advertising campaign prior to July 1964, that plaintiff accepted numerous reservations and deposits in support thereof from potential passengers who signed up for cruises expected to take place between July and September of 1964, and that plaintiff employed a crew and made all other necessary arrangements for the operation of the SHENENDOAH as a commercial passenger cruise vessel for the summer of 1964.

Plaintiff's attempt to state a cause of action grounded on the material facts recited in the complaint founders on several of the statutory exceptions to liability of the United States contained in the Federal Tort Claims Act.

Title 28 U.S.C.A. 2680(h) provides that Section 1346(b) of Title 28 shall not apply to "any claim arising out of * * misrepresentation." The claim of misrepresentation is essential to plaintiff's attempt to set out a cause of action in Count One of this case. The damages claimed by plaintiff herein are unequivocally alleged to have been caused by its reliance in early 1964 on the Coast Guard's false representation to plaintiff that the SHENENDOAH was certifiable and would be certified in time to engage in passenger cruises for the entire 1964 summer season. It is on these false representations that plaintiff says it re-

lied in incurring all the expenses it seeks to recover in Count One, including, but not limited to, the operational income and profit for one entire season, expenses for operations, the fees of naval architects and attorneys, travel and living expenses, disbursements to prosecute the appeal and get the certification, advertising expenses for one entire season, and damages for the "mass of unfavorable publicity" resulting from the failure of the Coast Guard to certify the vessel. Absent these false representations plaintiff would have had no arguable basis for any reliance on or for incurring the expenses in anticipation of the 1964 season, and had the representations been true plaintiff would have carried passengers during 1964 as it says it had planned to do. Had it carried fare-paying passengers in 1964 none of the vain expenses now complained of could be so characterized, nor could plaintiff claim a loss therefrom.

▪ The Government's position on the motion is that, call it by any other name, as plaintiff has done, the complaint here essentially is one for misrepresentation and thus is non-actionable. The decided cases strongly support the Government's analysis of the legal situation, that the bar of Section 2680(h) requires a dismissal of the complaint. Jones v. United States, 207 F.2d 563 (2d Cir. 1953), cert. denied 347 U.S. 921, 74 S.Ct. 518, 98 L.Ed. 1075; National Mfg. Co. v. United States, 210 F.2d 263 (8th Cir. 1954), cert. denied 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed. 1108; Anglo-American and Overseas Corp. v. United States, 144 F.Supp. 635 (S.D.N.Y.1956), aff'd 242 F.2d 236 (2d Cir. 1957); Hall v. United States, 274 F.2d 69 (10th Cir. 1959); United States v. Neustadt, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). See, also, United States v. Silverton, 200 F.2d 824 (1st Cir. 1952). If this matter be construed as setting out a claim for deliberate misrepresentation, i. e., wilful deceit as distinguished from negligent misrepresentation, plaintiff still must fail because of the provisions of Section 2680(h) of Title 28, which in pertinent part provides that Section 1346(b) of Title 28 shall not apply to "any claim arising out of  *  *  *  deceit  *  *  *  "

The complaint also must fail since, in addition to being fairly characterizable, as indicated above, as essentially a claim based on misrepresentation, it is equally susceptible to construction as a claim based on interference with advantageous contractual relations, at least with regard to any provable damages. Such a claim is likewise excepted from the operation of the Federal Tort Claims Act by the provisions of Section 2680(h), which provides in pertinent part:

> "The provisions of this chapter and section 1346(b) of this title shall not apply to—(h) Any claim arising out of  *  *  *  interference with contract rights."

The complaint leaves no doubt that all claimed damages are said to flow from the alleged frustration of the various contracts entered into by plaintiff in anticipation of having a fully operational passenger-carrying service for the 1964 summer season. This appears from the fact that Count One of the complaint relates all the specific items of claimed damages to the frustration of its performing or deriving the benefits of a number of contracts it entered into on the strength of the representation that the SHENENDOAH would be certified in time for the 1964 season.

▪ Finally, plaintiff's claim must fail by reason of the provisions of 28 U.S.C.A. 2680(a), the so-called "discretionary function" exception, which excludes from the operation of the Federal Tort Claims Act

> "any claim  *  *  *  based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

Faced as it was with a decision to be made about a sailing vessel which, if not unique, at least differed materially

from any other vessel the Coast Guard had been called upon to certify for passenger service in a very great many years, the Coast Guard had a statutory obligation, in the discharge of its obligation to protect the public safety, to see to it that it was a vessel that met minimum standards of seaworthiness in all respects, including stability.

It seems beyond argument that the discharge of this obligation, involving as it did, sophisticated calculations by naval architects, engineers, and safety experts, is a classic example of the discharge of a discretionary function by a federal agency and its officers. The Supreme Court of the United States, many years ago, in Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953), the leading case interpreting the so-called discretionary function exception to governmental liability under the Federal Tort Claims Act, observed (at p. 35, 73 S.Ct. at p. 968):

"It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. *It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion.* It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable." (Emphasis added.)

I rule that the conduct involved herein falls within the above-quoted language of *Dalehite* and is, therefore, within the so-called discretionary exception to the Federal Tort Claims Act.

Even if the so-called "planning stage—operational stage standard" used by some of the Circuits in construing the discretionary function exception (see American Exchange Bank of Madison, Wis. v. United States, 257 F.2d 938, 941, 78 A.L.R.2d 879 (7th Cir. 1958); United States v. Hunsucker, 314 F.2d 98 (9th Cir. 1962); Cf. Smith v. United States, 375 F.2d 243, 246 (5th Cir. 1967)), were to be applied herein to the assumed negligence of the Coast Guard officers involved in this case, it would not avail the plaintiff since I rule that the claimed negligence herein falls on the planning-stage side of the planning-operational distinction and thus the conduct involved herein is still within the protection of the discretionary function exception.

■ 2. With regard to the claimed violation of the Fifth Amendment, taking the complaint in the light most favorable to the plaintiff, the most that is alleged is that the conduct of the Coast Guard in the course of eventually arriving at a decision to certify plaintiff's vessel as modified operated to deprive plaintiff of the opportunity to engage in carrying passengers for hire during the summer of 1964. There is no allegation that the vessel was ever physically taken from plaintiff's possession, nor is there any allegation that plaintiff's right to use the vessel for non-passenger-carrying purposes, e. g., cargo-carrying or fishing, was ever interfered with by the Coast Guard. This cause of action cannot be maintained in this court because of the provision of 28 U.S.C.A. 1346(a) (2) which forecloses the consideration here of a civil action or claim against the United States, founded upon the Constitution, which is for a sum in excess of $10,000.

The Government's motion for summary judgment is allowed. Complaint dismissed.