**Robert J. DeROO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 211–85C.

United States Claims Court.

May 22, 1987.

C. Daniel Higgins, Stroudsburg, Pa., for plaintiff.

Lynn J. Bush, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, of counsel.

## OPINION

NAPIER, Judge:

This action comes before the Court on defendant's motion for summary judgment. Plaintiff, Robert J. DeRoo, seeks to recover actual and consequential damages from the United States resulting from the failure of the Department of Housing and Urban Development (HUD) to issue to Pioneer Mortgage, Inc. (Pioneer), a firm commitment to insure a loan for which plaintiff had applied. HUD initially issued a conditional commitment to Pioneer Mortgage to insure a loan from Pioneer to Mr. DeRoo. However, HUD later determined that the property did not meet the program requirements and refused to issue a firm commitment.

Having reviewed the uncontroverted facts, the submissions of the parties and the relevant case law, the Court concludes that defendant's motion for summary judgment should be granted and that plaintiff's complaint should be dismissed.

### Facts

Plaintiff is an individual, who, at the time the present controversy arose, resided in Tobyhanna, Pennsylvania. On January 13, 1982, Mr. DeRoo became the owner of a parcel of land located in Monroe County, Pennsylvania. Thereafter, on October 12, 1982, Mr. DeRoo entered into a contract to purchase a mobile home to be placed upon the property. The contract provided, among other things, that the home would be held for Mr. DeRoo for 30 days and that his $1,000 deposit would be returned if financing were not available.

On October 24, 1982, Mr. DeRoo submitted an application for a Federal Housing Administration, Department of Housing and Urban Development, insured mortgage loan to Pioneer Mortgage, Inc., together with other papers, including a septic system permit which showed that Mr. DeRoo intended to construct his septic system by using an elevated sand mound. After submission of additional forms to Pioneer, Mr. DeRoo, as well as his associate, Mr. Lee H. Pierce (an employee of Pioneer Finance and Mortgage), on or about December 15, 1982, were assured by a Mr. Eugene Brown of Pioneer Mortgage that Mr. DeRoo's application for a mortgage would be approved. Based upon this assurance, Mr. DeRoo caused the foundation for his home to be constructed.

Thereafter, Mr. DeRoo received from Pioneer a form letter dated January 21, 1983, forwarding a conditional commitment for insurance of plaintiff's loan from HUD to Pioneer. This conditional commitment specifically provided, under the heading "General Commitment Conditions:"

PROPERTY STANDARDS: All construction, repairs, or alterations proposed in the application or on the drawings and description of materials returned herewith shall equal or exceed the HUD Minimum Property Standards.

The Pioneer form letter which forwarded to plaintiff the HUD conditional commitment to Pioneer specifically provided that the conditional commitment was:

SUBJECT TO RECEIPT OF FIRM COMMITMENT AND ALL CONDITIONS THEREON. *ALL CONDITIONS MUST BE MET BEFORE FINAL SETTLEMENT.*

Further, the HUD conditional commitment contained a section entitled "Specific Commitment Conditions (Applicable when checked)". An appropriate box was checked which applied the following language under "Specific Commitment Conditions" to the mortgage insurance application:

E. Health Authority Approval: Local Health Authority shall complete form FHA 2573 indicating acceptable installation of individual water supply and/or sewage disposal system. (Approval by letter or Health Authority Form may be used).

The sewage disposal system proposed by Mr. DeRoo included the use of an elevated sand mound. Although this system was approved by the Pennsylvania Department of Environmental Resources, Mr. DeRoo concedes that his proposed elevated sand mound was not in accord with existing HUD regulations.

Upon receipt of a copy of the HUD conditional commitment to Pioneer, Mr. DeRoo took steps to prepare for closing the mortgage. Mr. DeRoo, based upon the issuance of the conditional commitment, arranged for a survey, placed an order for title insurance, and retained counsel to handle the mortgage closing.

Subsequently, HUD determined that Mr. DeRoo's proposed use of an elevated sand mound was unacceptable under HUD requirements. In response to an inquiry from Pioneer concerning HUD's rejection of Mr. DeRoo's proposed use of an elevated sand mound for his individual sewage disposal system, HUD forwarded its response to Pioneer by letter of February 18, 1983, setting forth in detail the reasons for the rejection, and requesting return of the conditional commitment. HUD never issued an endorsement of insurance on any note from Pioneer to plaintiff. Thereafter, Pioneer issued an "Adverse Action Statement" dated March 9, 1983, declining plaintiff's application on the grounds that the property was unacceptable.

Subsequently, Mr. DeRoo filed a complaint in the United States District Court for the Middle District of Pennsylvania. That Court transferred the case to the United States Claims Court.

In his complaint, Mr. DeRoo alleges that he has sustained the following damages:

(a) Additional interest and expense by reason of a loan at First Eastern Bank, N.A., in the amount of $20,000.

(b) The loss of a favorable thirty year fixed rate loan in the amount of $30,-800.00 at an interest rate of twelve (12%) percent.

(c) The cost of a survey, legal fees and title insurance in reference to the loan commitment issued by the Defendants.

### Discussion

In this action, the plaintiff argues that the Government is bound by the acts of its officials in issuing the conditional commitment of insurance to Pioneer. Plaintiff argues that the Government is estopped from revoking the commitment because HUD had knowledge of the proposed septic system prior to issuance of the commitment. Alternatively, the plaintiff argues that the Government is liable in damages for the negligence of its officials in issuing the commitment.

The Government, in response, argues that the United States cannot be estopped to deny the actions of its agents if those actions violate applicable law or government regulations or otherwise exceed the agent's actual authority. Further, the Government argues that the United States had no contractual duty toward the plaintiff, and, therefore, claims that the Court lacks jurisdiction to entertain this action. Finally, the Government argues that any claim against the United States based on negligent misrepresentation, wrongful inducement or careless performance by a Government official is not within the jurisdiction of this Court.

### A. Statutory Background

Pursuant to the National Housing Act, the Secretary of HUD is authorized to insure mortgages executed to finance the purchase of residential properties. Applicants who wish to participate in the single-family mortgage insurance program must apply to a HUD-approved mortgage lender, who then applies to HUD.

The following statutory and regulatory sections pertaining to the insurance of mortgages are relevant in deciding the outcome of this case. Title 12 U.S.C. § 1709, Insurance of Mortgages, provides:

(a) The Secretary is authorized, upon application by the mortgagee, to insure as hereinafter provided any mortgage offered to him which is eligible for insurance as hereinafter provided, and, upon such terms as the Secretary may prescribe, to make commitments for the insuring of such mortgages prior to the date of their execution or disbursement thereon.

(b) To be eligible for insurance under this section a mortgage shall—

(1) Have been made to, and be held by, a mortgagee approved by the Secretary as responsible and able to service the mortgage properly.

24 C.F.R. § 200.5 (1982), Scope and nature of programs, states:

The Federal Housing Administration does not make loans or build housing but operates insurance programs under the provisions of the National Housing Act. The FHA *provides insurance for private lenders* against loss on mortgages financing homes * * *. (Emphasis added.)

24 C.F.R. § 200.143 (1982), Purpose and content, states:

Every application, whether for insurance of a home type or project type mortgage, sets forth the required information to enable FHA to determine eligibility under a particular program. The eligibility consideration covers three general areas as follows:

\* \* \* \* \* \*

(b) The eligibility of the property with respect to compliance with FHA's statutory and regulatory requirements.

24 C.F.R. § 200.146 (1982), Acceptance, rejection and reconsideration states:

(a) If an application for mortgage insurance meets the eligibility requirements a commitment for insurance is issued.

(b) If the application for mortgage insurance is not eligible for processing or does not qualify, this fact is reported to the applicant together with the reason for rejection.

24 C.F.R. § 200.147 (1982), Issuance of commitment, states:

After a determination that the mortgagor and the property offered for security meets the standards and requirements as to eligibility, a commitment is prepared and forwarded over the signature of the Authorized Agent to the approved mortgagee setting forth the terms and conditions under which the mortgage transaction will be insured. *The commitment is a binding contract between the FHA and the mortgagee* presenting the application. (Emphasis added.)

B. Scope of Authority.

In its response to defendant's motion for summary judgment, Mr. DeRoo states that "it is plaintiff's position not that the Government had an unalterable contractual obligation but that the Government had an obligation not to revoke its commitment based upon information known to the Government some three months prior to the issuance of the commitment." In essence, Mr. DeRoo argues that the HUD officials who initially approved the conditional commitment to Pioneer had the authority to waive the applicable requirements dealing with sewage disposal systems mandated by the HUD regulations governing this particular HUD program and that, therefore, the Government was bound by the acts of these officials.

■ It is well settled that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92

L.Ed. 10 (1947). *See also Lin v. United States*, 3 Cl.Ct. 213, 216 (1983); *Dalaly v. United States*, 3 Cl.Ct. 203, 206 (1983); *Housing Corp. of America v. United States*, 199 Ct.Cl. 705, 711–12, 468 F.2d 922, 925 (1972). Accordingly, the Government is not bound by the acts of its agents which exceed the scope of those agents' actual authority, *Federal Crop Ins. Corp. v. Merrill*, 232 U.S. at 384, 68 S.Ct. at 3. *See also City of Klawock v. United States*, 2 Cl.Ct. 580, 586 (1983), *aff'd*, 732 F.2d 168 (Fed.Cir.1984); *C.P. Squire Contractors, Inc. v. United States*, 716 F.2d 865, 868 (Fed.Cir.1983), even if the agent himself may have been unaware of the limitations upon his authority. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. at 384, 68 S.Ct. at 3.

■ There is no dispute in this case that the sewage disposal system proposed by Mr. DeRoo failed to meet the specifications set forth in the 1982 edition of the HUD *Minimum Property Standards* for one and two family dwellings. Mr. DeRoo claims that "[i]t is unrealistic to place a burden on (him) to be familiar with the HUD Minimum Property Standards." However, "just as everyone is charged with knowledge of the United States statutes at large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents." *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. at 384–85, 68 S.Ct. at 3. Further the Supreme Court has stated:

The oft-quoted observation in *Rock Island, Arkansas & Louisiana R. Co. v. United States*, 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188, that "Men must turn square corners when they deal with the Government," does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. at 385, 68 S.Ct. at 3.

Because Mr. DeRoo's application failed to meet the eligibility requirements set forth pursuant to the HUD regulations and

because Mr. DeRoo has failed to show that the HUD officials who processed the application had the authority to waive these requirements, the United States cannot be bound by the issuance of the conditional commitment.

### C. Privity of Contract

Assuming *arguendo* that Mr. DeRoo, by inference, claims that a contractual relationship existed between himself and HUD thereby entitling him to relief, the Court feels compelled to discuss the nature of this relationship.

■ It is clear that in order to prevail on a contract theory of recovery, Mr. DeRoo must establish, *inter alia*, privity of contract between himself and the Government. *D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 598, 372 F.2d 505, 508 (1967); *Housing Corp. of America v. United States,* 199 Ct.Cl. at 709–10, 468 F.2d at 924 (1972).

■ "An express contract is an agreement or mutual assent by the parties manifested in words, oral or written." *People's Bank & Trust Co. v. United States,* 11 Cl.Ct. 554, 566 (1987). In this case, there is no express contract between the parties. The only written document which could be claimed to constitute an express contract between the parties is the conditional commitment issued by HUD to Pioneer. However, 24 C.F.R. § 200.147 (1982) clearly states that "[t]he commitment is a binding contract *between the FHA and the mortgagee* presenting the application." (Emphasis added.) The HUD regulations further provide that any financial institution approved by the Federal Housing Commissioner as a mortgagee may apply for mortgage insurance. 24 C.F.R. § 200.142 (1982); 24 C.F.R. § 203.1 (1982). There is no provision for submission of an application by an individual mortgagee or potential mortgagor such as Mr. DeRoo. *See* 24 C.F.R. § 203.2(a) (1982). Therefore, it is clear that no express contract existed between the parties.

"An implied-in-fact contract is a real contract in the usual sense, although the parties involved may not have used specific words of agreement. *See J.C. Pitman & Sons, Inc. v. United States,* 161 Ct.Cl. 701, 704–05, 317 F.2d 366, 368 (1963). Although a contract implied-in-fact is based on the conduct of the parties and the other circumstances surrounding the transaction, it requires a showing of the same contractual elements as those required to establish an express contract." *Peoples Bank & Trust Co. v. United States,* 11 Cl.Ct. at 566.

■ A contract implied-in-fact is founded upon a meeting of the minds which is inferred from the conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding. *Algonac Mfg. Co. v. United States,* 192 Ct.Cl. 649, 673–74, 482 F.2d 1241, 1256 (1970).

■ In this case there is no conduct or course of dealing between Mr. DeRoo and HUD officials to indicate that a meeting of the minds had occurred. In fact, Mr. DeRoo dealt only with Pioneer in seeking to obtain a loan. Further, an implied-in-fact contract cannot exist in this case, because any oral representations or assurances which might have been made would also have exceeded the agent's actual authority. *Prestex v. United States,* 3 Cl.Ct. 373, 377 (1983).

Finally, the Supreme Court in *United States v. Neustadt,* 366 U.S. 696, 709, 81 S.Ct. 1294, 1301, 6 L.Ed.2d 614 (1961), quoting from the legislative history of the Housing Act of 1954 stated "that the mortgage insurance program was not designed to insure anything other than the repayment of loans made by lender-mortgagees; and that 'there is no legal relationship between the FHA and the individual mortgagor.'" H.R.Conf.Rep. No. 2271, 83d Cong., 2d Sess., pp. 66–67, U.S.Code Cong. & Admin.News 1954, p. 2723. Although *United States v. Neustadt* dealt with a claim for negligent and inaccurate appraisal of property by FHA for mortgage insurance purposes it is not inapposite to the case at hand.

■ The HUD insurance program does not impose a duty upon HUD to oth-

ers, except to insure a lender's mortgage if it complies with 12 U.S.C. § 1709 and the applicable HUD regulations. When a federal agency acts in a sovereign capacity, no express or implied contract is created with those who are involved in the particular financial transaction unless they are signatories to the contracts executed by the agency. *Penn Towne Builders, Inc. v. United States*, 4 Cl.Ct. 677, 682–83 (1984).

Because the record fails to indicate any express or implied-in-fact contracts any such claim by plaintiff must fail.

### D. Negligence

Alternatively, Mr. DeRoo argues that the Government must be liable in damages for the negligence of its officials in issuing the conditional commitment. In support of his claim, Mr. DeRoo cites *Ghent v. Lynn*, 392 F.Supp. 879 (D.Conn.1975), a case in which HUD rescinded a conditional commitment. In *Ghent*, the plaintiff sued for breach of contract, claiming that an extension of commitment was illegally rescinded. The district court denied defendant's motion to dismiss for lack of jurisdiction, and, in the alternative also denied a motion for summary judgment.

█ However, Mr. DeRoo's claim of negligence on the part of Government officials in issuing the commitment appears to be based on a tort theory of recovery. It is clear that the Tucker Act, 28 U.S.C. § 1491(a)(1), expressly excludes the consideration of tort claims from the jurisdiction of this court. *H.H.O., Inc. v. United States*, 7 Cl.Ct. 703, 705–06 (1985); *Transcountry Packing Co. v. United States*, 215 Ct.Cl. 390, 568 F.2d 1333 (1978).

As the Court of Claims held in *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 749–50, 508 F.2d 817, 821 (1974):

The decision of the Supreme Court in *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961), removes any doubt that claims based on negligent misrepresentation, wrongful inducement, or the careless performance of a duty allegedly owed, are claims sounding in tort. In that case, the Court held that the United States was not liable

to the purchaser of a home who relied on an inaccurate appraisal by the Federal Housing Administration and who was thereby induced to pay a purchase price in excess of the fair market value of the house. In speaking of the acts of the Government, which were quite similar to those complained of by plaintiffs in this case, the Supreme Court there stated:

To say, as the Fourth Circuit did, that a claim arises out of "negligence," rather than "misrepresentation" when the loss suffered by the injured party is caused by the breach of a "specific duty" owed by the Government to him, *i.e.*, the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is only to state the traditional and commonly understood legal definition of the tort of "negligent misrepresentation," as is clearly, if not conclusively, shown by the authorities set forth in margin, * *. [366 U.S. at 706, 81 S.Ct. at 1300]

Accordingly, this Court lacks jurisdiction to entertain any claim by Mr. DeRoo based on a tort theory of recovery.

█ It should be noted, however, that the Claims Court has interpreted the Tucker Act to "allow jurisdiction over claims which, although perhaps somewhat 'tortious' in nature, are essentially based upon the breach of a contractual obligation." *H.H.O. Inc. v. United States*, 7 Cl.Ct. at 706. *See also Chain Belt Co. v. United States*, 127 Ct.Cl. 38, 54, 115 F.Supp. 701, 711–12 (1953). However, in order for an action to be maintained in this Court under that theory, there must be a showing by the plaintiff that a contractual obligation existed. No such showing has been made in this case.

A motion for summary judgment under Rule 56 of the Rules of the United States Claims Court shall be granted where it appears from the pleadings that there is no genuine issue as to any material fact *and* that such facts entitle the moving party to a judgment as a matter of law. RUSCC 56(c); *Cooper v. Ford Motor Co.*, 748 F.2d

677, 679 (Fed.Cir.1984). Summary judgment may not be granted where there are disputed material factual issues which can only be resolved by trial on the merits. *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884 (Fed.Cir.1983); *Niagara Mohawk Power Corp. v. United States,* 207 Ct.Cl. 576, 583, 525 F.2d 1380, 1385 (1975). The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact. All inferences must be viewed in the light most favorable to the party opposing the motion. *Adickes v. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

### Conclusion

Because the record indicates that there are no genuine issues as to any material fact and because the facts, as viewed in a light most favorable to plaintiff, entitle the defendant to judgment as a matter of law, defendant's motion for summary judgment is granted and the Clerk of the Court is directed to dismiss the complaint. No costs.