Frank K. HARTLE, Maxine E. Hartle, and Dawn M. Janes, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 255–89L.

United States Claims Court.

Oct. 31, 1989.

Gary J. Ceriani, Denver, Colo., for plaintiffs.

Alan Brenner, Washington, D.C., for defendant.

## OPINION

LYDON, Senior Judge.

The dispute in this case centers around the purchase by plaintiffs, Frank K. Hartle and Maxine E. Hartle (husband and wife) (Hartle), of real property owned by the Department of Housing and Urban Development (HUD).[1] Plaintiffs, in their complaint, seek, inter alia, recission of the purchase agreement and refund of the purchase price or, in the alternative, an award of compensatory damages based on the contention the purchase agreement was tainted by a mutual and material mistake of fact. Defendant has moved to dismiss the complaint contending that plaintiffs' claim (1) sounds in tort and (2) seeks equitable relief and thus is beyond the jurisdiction of the court. Defendant also claims that plaintiff Dawn M. Janes lacks standing to sue as a party plaintiff in this case. Plaintiffs oppose defendant's motion to dismiss. For reasons which follow, defendant's motion to dismiss is denied.

---

**1.** The complaint also lists Dawn M. Janes, (Janes) the married adult daughter of Frank K. and Maxine E. Hartle, as a party plaintiff. Reference to plaintiffs herein-after will be to Frank K. and Maxine Hartle unless otherwise indicated.

*Facts*

On or about May 17, 1986, HUD advertised listings of real properties under the heading "Buy HUD Acquired Properties." The advertisement also advised those interested in a listed property to "Contact A Real Estate Broker For Details." One such listing involved a house located at 4673 South Pennsylvania Street, Englewood, Arapahoe County, Colorado (Englewood property). Under "Description", the listing applicable to this house read, "1360 sq. ft., 3 bdrm, 2 bath, 2 gar." The listed price for the house was "$66,500."

Plaintiffs subsequently contacted a real estate broker, ostensibly on the strength of the advertised listing discussed above. Acting through the broker, plaintiffs entered into a Standard Retail Sales Contract for the purchase of the Englewood property. This Sales Contract did not contain any description of the property other than to identify the property by its address, lot numbers, block number and area (South Broadway Heights). The Sales Contract was signed by the plaintiffs on May 27, 1986 and by an appropriate HUD official on May 29, 1986. The purchase price, agreed to by the parties, for the Englewood property was $73,500. Only the first page of the Sales Contract was made available to the court. However, the contract was "subject to the conditions of sale on the reverse [side of the first page] hereof, which are incorporated and made a part of this contract." The sale of the property was to close not later than July 13, 1986. The closing documents were executed by the parties on or about August 4, 1986.

On August 4, 1986, HUD issued a Joint Tenancy Deed to the Englewood property to Frank K. Hartle and Maxine E. Hartle and Dawn Maurine Hartle. The deed was issued "Subject to all covenants, restrictions, reservations ... and rights appearing of record and subject to any state of facts an accurate survey would show."

On July 8, 1987, the City of Englewood sent a "Zoning Verification Form" (ZVF) to Eric and Dawn Janes at an address in Kallua–Kona, Ill. 96745, with a carbon copy to plaintiff Frank Hartle at an address in Littleton, Co 80123,[2] which stated, with reference to the Englewood property: "According to Section 16.4–4, 0, of the Comprehensive Zoning Ordinance of the City of Englewood 'No structure or vehicle on the same lot with the dwelling shall be used for residential purposes.' See attached for previous Board action on this property."[3]

On December 14, 1987, an attorney wrote HUD, on behalf of plaintiffs, in pertinent part as follows:

With reference to my letter to you of August 8th, a copy of which is enclosed for ease of reference, I regret to advise you that the City of Englewood has refused to permit the use of the third bedroom (in the detached structure), having determined that such a use is in violation of the applicable zoning ordinance. A hearing was held at which my clients' request for recognition that the use is a single family use and therefore not in violation of the zoning ordinance was refused as well as their alternative request for an appropriate variance.

As you were advised in my previous letter, it is now necessary to make a claim against you for the damage resulting from your erroneous representation of the property as a 3 bedroom residence. Technically, I assume that the claim

---

**2.** It would appear that plaintiffs at this time were renting out the Englewood property.

**3.** Two previous actions were attached to the July 8, 1987 ZVF. The first, dated March 25, 1985 was a Notice of Violation by the City of Englewood directed at the Englewood property relative to a building at the rear of said property. At this time the property was owned by one other than the plaintiffs. The Notice read, in pertinent part, as follows: "No structure or vehicle on the same lot with the dwelling shall be used for residence purposes. The residence in the rear of your property will have to be vacated within thirty (30) days of receipt of this notice." A notation on the copy of the Notice, appended to plaintiffs' complaint, indicates the matter was "closed 10–5–85." The second action was a determination by the City of Englewood Board of Adjustment and Appeals in 1972 which stated, as to the Englewood property that: "use of the premises is for single-family purposes only, but the kitchen may remain in the accessory structure as a second kitchen for the single-family use."

must be a rescission; and that is acceptable to my clients. They made significant improvements to the property, however, before learning of the misrepresentation; and I am assuming that you would prefer not to take the property back and pay for those improvements, but rather make an appropriate adjustment in the purchase price which was paid. That is also acceptable to my clients.

Please let me know what solution you propose. I will be glad to obtain for you whatever detailed information you might like to have. I will appreciate a prompt reply since my clients now have decisions which they must make which are dependent upon the course of action which you prefer. If you wish to take the property back, they need to terminate all rental and sales efforts on the property.

On March 30, 1988, plaintiffs submitted a claim to HUD contending the Englewood property was misrepresented in the May 17, 1986 advertisement in the Denver Post as containing three bedrooms whereas, in reality the property only contained two bedrooms. Plaintiffs contended that the Englewood property is only usable as a two bedroom house rather than as a three bedroom house as represented in the May 17, 1986 listing, and thus is much less marketable and less valuable. Plaintiffs estimated this difference in value to be $25,000 and sought to recover this amount from HUD. HUD refused to rescind the Sales Contract and take the property back and

refund to plaintiffs the sales price. HUD ostensibly also denied plaintiffs' claim for $25,000 as damages for its misrepresentation claim.

Plaintiffs filed suit in this court on May 5, 1989 contending the Sales Contract they entered into with HUD was based on a mutual and material mistake of fact, *i.e.,* both parties believed the Englewood property included three bedrooms available for residential use.

### Discussion

■ Defendant presents two basic arguments in support of its motion to dismiss. It argues that the court lacks jurisdiction over the claim asserted in the complaint because the claim sounds in tort and the relief sought is purely equitable.[4]

■ A. It is well settled that this court lacks jurisdiction to address tort claims. 28 U.S.C. § 1491(a)(1) (1982). *Shanbaum v. United States,* 1 Cl.Ct. 177, 179, n. 3 (1982), *aff'd,* 723 F.2d 69 (1983). It is less settled that the court lacks jurisdiction when there is a "tortious" breach of contract rather than a tort independent of the contract. *See L'Enfant Plaza Properties, Inc. v. United States,* 227 Ct.Cl. 1, 11, 645 F.2d 886, 892 (1981). In the case at bar, the court finds itself in the less settled area.

■ Plaintiffs claim that they were misled by the advertised listing of the sale of the Englewood property.[5] The listing stat-

---

**4.** Defendant also contends that plaintiff Dawn M. Janes lacks standing to sue since she was not a listed party on the Sales contract relative to purchase of the Englewood property. Since there was no privity of contract between Dawn M. Janes and HUD, the court, defendant argues, lacks subject matter jurisdiction over her claim, citing *Merritt v. United States,* 267 U.S. 338, 45 S.Ct. 278, 69 L.Ed. 643 (1925), *inter alia.* Defendant, however, ignores the fact that the purpose of the Sales Contract was to effect purchase of the Englewood property. The property in question was conveyed by HUD, pursuant to the Sales Contract, by Joint Tenancy Deed, to Frank K. and Maxine E. Hartle and Dawn Maurine Hartle (now Dawn M. Janes). Under these circumstances, Dawn M. Janes is an interested party in this suit involving the property and a privity nexus exists sufficient to defeat defendant's motion to dismiss.

**5.** *En passant,* it should be noted that as a general rule advertisements, which the newspaper listing clearly was, are not considered offers and may not, without more, be part of any ensuing contract. *See Chicago Joint Bd., Amal. Cloth. Wkrs. v. Chicago Tribune Co.,* 307 F.Supp. 422, 424 (N.D.Ill.1969), in which the court observed that under general contract theory, it is presumed that general advertising aimed at the public is not an offer to enter into a contract, citing 1 *Corbin, Contracts* § 25, at 75 (1963) ("advertisements are ... mere requests to consider and examine and negotiate"). Moreover, if plaintiffs could have discovered the misrepresented fact by a check of appropriate records, or by other means associated with a reasonably prudent buyer, their misrepresentation may lose some or all of its vitality. *See Pia v. United States,* 7 Cl.Ct. 208, 211 (1985).

ed it was a three bedroom house when, in fact, it was a two bedroom house. Plaintiffs claim the listing misrepresented a material fact which was part and parcel of the Sales Contract they entered into with HUD. Plaintiffs claim both they and HUD were mutually mistaken about a material fact and that the terms of the Sales Contract, *i.e.*, the price, would have been different had the true fact been known to both parties. The legal thrust of plaintiffs' complaint is mutual mistake of a material fact—a misrepresentation of a material fact.

■ Generally, a claim arising out of misrepresentation of a material fact is a tort that is not actionable against the government under the Tort Claims Act, 28 U.S.C. § 2680(h). *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961). *See also Ausland v. United States*, 488 F.Supp. 426, 431–32 (D.S.D. 1980); *Coastwise Packet Co. v. United States*, 277 F.Supp. 920, 923 (D.Mass.1968). As indicated earlier, this court likewise has no jurisdiction over misrepresentation claims which are essentially independent tort claims. *See Garrett v. United States*, 15 Cl.Ct. 204, 209 (1988); *Sanders Midwest, Inc. v. United States*, 15 Cl.Ct. 345, 350 (1988); *DeRoo v. United States*, 12 Cl.Ct. 356, 362 (1987); *Somali Dev. Bank v. United States*, 205 Ct.Cl. 741, 749–50, 508 F.2d 817, 821 (1974). Defendant reads plaintiffs' complaint narrowly and thus seeks to place it within the pale of the above cited cases. Defendant views plaintiffs' misrepresentation claim as an independent tort action claim. If this were so, defendant would be right in seeking dismissal of the complaint.

On the other hand, it is not unreasonable to read plaintiffs' misrepresentation claim as so closely bound up with the Sales Contract between the Hartles and HUD that the misrepresentation claim lies in contract rather than tort. *L'Enfant Plaza, supra,* 227 Ct.Cl. at 11, 645 F.2d at 892. *See also Bird & Sons, Inc. v. United States*, 190 Ct.Cl. 426, 431, 420 F.2d 1051, 1054 (1970); *Chain Belt Co. v. United States*, 127 Ct.Cl. 38, 54, 115 F.Supp. 701, 711–12 (1953).

■ In the case at bar, there appears to be a direct connection between HUD's contractual obligations and the alleged tortious conduct. The action before the court seems to arise primarily from a contractual undertaking. Viewed in this manner, the court has jurisdiction over the claim asserted.[6] *See San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 960 (Fed.Cir.1989).

■ B. Defendant also asserts that the court cannot grant plaintiffs the relief it seeks, *i.e.*, rescission, an equitable remedy. Plaintiffs seek rescission of the Sales Contract based on the mutual mistake of the parties as to a material fact underscoring the Sales Contract. It is true that this court cannot grant pure equitable relief. *See United States v. Testan*, 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 3–5, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969).[7] Our "jurisdiction is limited to money claims against the United States Government." *United States v. Testan, supra.* If plaintiffs were only seeking rescission, defendant's position would be well taken. However, it is clear that plaintiffs are seeking from this court a money judg-

---

6. It is true that plaintiffs' complaint is not artfully drawn. However, the court looks at the substance of plaintiffs' claim rather than terminology or draftsmanship, and the thrust and intent of plaintiffs' misrepresentation claim bespeaks the assertion that a breach of contract occurred. *See Gregory Lumber Co. v. United States*, 9 Cl.Ct. 503, 525 (1986). A claim based on misrepresentation of contractual obligations should not be barred simply because it might also be stated as a tort. *Travelers Indem. Co. v. United States*, 16 Cl.Ct. 142, 150 (1988).

7. The Supreme Court in *United States v. King*, 395 U.S. at 1, 3, 89 S.Ct. at 1501, 1502, did recognize the authority of the Court of Claims, our predecessor, to render "judgments for money found due from the government to the petitioner." Plaintiffs seek rescission to recover moneys they paid HUD, which they claim they are entitled to recover because the Sales Con-

ment.[8]

■ This court, as was the case with its predecessor court, can exercise equitable power, *e.g.*, rescission and reformation of a contract, when the exercise of that power is incidental to the court's general jurisdictional authority to render money judgments. *Marathon Oil Co. v. United States*, 17 Cl.Ct. 116, 119 (1989). *See Pauley Petroleum, Inc. v. United States*, 219 Ct.Cl. 24, 38–40, 591 F.2d 1308, 1316–17 (1979) for a general discussion of this matter. *See also Rash v. United States*, 175 Ct.Cl. 797, 804–05, 360 F.2d 940, 944, 947 (1966) (mutual mistake in sale of land contract resulting in rescission jurisdiction assumed); *Nat'l Presto Indus., Inc. v. United States*, 167 Ct.Cl. 749, 760–69, 338 F.2d 99, 106–11 (1964), *cert. denied*, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965) (mutual mistake of fact).

Since the court views plaintiffs' complaint as a claim for a money judgment, rescission would be exercised, if at all, as an incident to the court's general jurisdiction to render money judgments. Defendant's motion to dismiss plaintiffs' claim for rescission is accordingly denied.

*Conclusion*

Defendant's motion to dismiss plaintiffs' complaint for lack of jurisdiction is denied. Likewise, defendant's motion to dismiss Dawn M. Janes as a party plaintiff is also denied. The court's discussion in this memorandum opinion should not be construed in any way as indicative of the court's view on the merits of the claim asserted. The case must now proceed on plaintiffs' contention, as set forth in their complaint, that as a result of a mutual mistake, the Sales Contract is subject to rescission and plaintiff is entitled to recover its purchase price—returning the property to HUD in reasonable condition, or, absent rescission, an award

of compensation as damages for the misrepresentation contained in the listing of the property. Defendant's answer to the complaint shall be filed thirty (30) days after the filing of this memorandum opinion. The parties, after the filing of defendant's answer shall confer and shall file with the court, within the time period provided by the Rules of the Court (RUSCC), a Joint Status Report as required by Appendix G to the Rules.

fails, plaintiffs seek to recover compensation sufficient to remedy the damages they sustained because of the tortious breach of contract they suffered from HUD's alleged misrepresentation of a material fact relating to said contract.

---

tract under which the moneys were initially paid was tainted and invalid.

**8.** Plaintiffs seek to recover the purchase price they paid HUD, clearly a money claim, utilizing the equitable principle of rescission to accomplish this effort. Alternatively, if rescission