**D & S UNIVERSAL MINING CO., INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

**and**

**S.S. Joe Burford, Intervenor.**

**No. 612–80.**

United States Claims Court.

Dec. 16, 1983.

---

L. Paige Marvel, Baltimore, Md., for plaintiff and intervenor.

Kathleen A. Flynn, Washington, D.C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D.C., for defendant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TIDWELL, Judge:

This government contract case is before the court on Plaintiff's Motion for Summary Judgment filed March 3, 1983 and defendant's opposition thereto filed May 23, 1983.

Oral Argument was heard on October 20, 1983 with counsel appearing before the court. For the reasons set forth below, the court finds that there exist disputed issues of material fact which render summary judgment inappropriate. Plaintiffs' Motion for Summary Judgment, therefore, is denied.

## FACTS

In September of 1979, the Small Business Administration (SBA), pursuant to Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), entered into prime contract No. GS–035–51472 with the General Services Administration (GSA), under the terms of which SBA delegated to GSA the authority to administer a requirements subcontract for the procurement of coal to be awarded by SBA under the prime contract. At approximately the same time, SBA entered into requirements subcontract No. SB830–8(a)–79–P–110, with plaintiff, D & S Universal Mining, Inc., a coal broker, to supply FSC Class 9110 bituminous coal from October 1, 1979 to September 30, 1980 for use in five Government heating plants in the Washington, D.C. area pursuant to five supply schedules attached to the contract. To procure the coal, D & S entered into a purchase order with intervenor, S.S. Joe Burford, Inc. At various times from December 6, 1979 and continuing through June 19, 1980, 91 of the 343 cars of coal shipped by D & S through its supplier, Burford, were rejected by defendant upon visual inspection at destination.[1] The rejections were due to the alleged presence of excessive "fines" (coal particles less than ¼″ in diameter), and excessive "oversize" (chunks of coal larger than the top size specified in the supply schedules), and in some instances, for the alleged presence of extraneous matter and for the lack of weatherproofing and oil treatment as required in the contract.

Each coal supply schedule attached to the contract includes minimum and maximum coal dimensions and the contract requires that all coal shipped be "reasonably free" from over- and undersized coal, extraneous matter, and impurities. However, not one of the schedules included applicable screening percentages, though the contract provided that such percentages would be specified when a definite size consist[2] was required.

Mr. Lewis Dodds, president of D & S, disagreed with the Contracting Officer's decision to reject the coal and declined to remove the 91 cars of coal from government property despite defendant's instructions to do so. Thereafter, the parties met and agreed that screen tests of the rejected coal would be conducted.[3] Accordingly, on various occasions from February through July of 1980, personnel of the United States De-

---

1. Thereafter, D & S furnished coal from another supplier, Champion Coal Company. Sixteen carloads of coal from Champion were also rejected by defendant. While it is unclear from the record before the court whether the Champion rejections are included in this litigation, our denial of Plaintiff's Motion for Summary Judgment makes it unnecessary for the court to determine that fact at this time.

2. "Size consist" is, according to plaintiff, "the maximum percentages of coal in excess of the specified top size and smaller than the specified bottom size." Affidavit of Leonard J. Timms, Exhibit C to Plaintiff's Motion for Summary Judgment.

3. Screen tests apparently indicate the percentages of allowable conforming coal which will be retained by or passed through a screen or screens. Exhibit "A" to Plaintiff's Motion for Summary Judgment, Contract "Size, Size Consist and Preparation" § b(iii).

partment of the Interior, Bureau of Mines tested samples taken from 54 of the 91 rejected cars. The tests revealed that the rejected coal contained from 18.3 to 34.9% fines and from 6 to 9.9% oversize chunks. The government viewed the results as confirmation of its contention that the rejected coal was excessively high in fines and oversize coal, whereas the plaintiff maintained that these percentages conformed to the "reasonableness" standard of the contract, and, thus, payment was due for the rejected carloads.

## PROCEDURAL HISTORY

Plaintiff subsequently submitted its claim for payment to the Contracting Officer. On March 23, 1980, the Contracting Officer issued a decision denying the claim as to 67 cars of coal. Thereafter, plaintiff filed an action on November 13, 1980, with the Court of Claims[4] under the Contract Disputes Act of 1978, 41 U.S.C. § 609, Pub.L. No. 95–563, 92 Stat. 2388 (1978), amended Pub.L. 97–164, 96 Stat. 47–49 (1982), claiming that the government breached the contract by erroneously rejecting the coal and asking for payment therefor with interest from the date of rejection. The government answered and counterclaimed for demurrage and freight costs incurred. S.S. Joe Burford was allowed to intervene on October 26, 1981. Plaintiff has twice amended its complaint in response to defendant's counterclaims and to another Contracting Officer's decision, dated April 19, 1982, which denied plaintiff's claims on an additional 24 cars for a rejection total of 91 cars. On March 3, 1983, plaintiff filed a Motion for Summary Judgment. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1491.

## DISCUSSION

■ Summary judgment may be rendered only where it clearly appears that there are no genuine issues of material fact and the moving party is, therefore, entitled to judgment as a matter of law. *South*

---

4. Filed as a petition in this court's predecessor, the United States Court of Claims.

5. Usage of trade is defined by the Uniform Commercial Code as a practice or course of

*Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 289 (1982); *Garcia v. United States,* 123 Ct.Cl. 722, 732, 108 F.Supp. 608, 613 (1952). On such motions the duty of the court is not to resolve genuine issues of fact, but to determine if such issues are present. *Garcia,* 123 Ct.Cl. at 732, 108 F.Supp. at 613. An opposing party may not create a genuine issue of fact by merely suggesting that such an issue might arise if the case were to go to trial, but "must set forth specific facts showing there is a genuine issue for trial." *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983).

■ At this point, the court is of the opinion that the contract is unclear as to the size consist of the coal permitted. Each party has offered its own interpretation of the contract supported by affidavits and documentation. Plaintiff has presented affidavits which aver that its construction of the contract terms is reasonable and that the coal, as shipped, was reasonably free of oversize coal and fines as required by the contract. Similarly, defendant contends with supporting affidavits that its interpretation of the size consist of the coal required under the contract is reasonable and conforms to the accepted usage of the mining trade.[5] This dispute over the size consist of the coal is a material issue because it goes to the heart of the contract, namely, did plaintiff provide what the government contracted for. Based on this showing, the court finds that defendant has set forth sufficient facts to carry its burden.

■ It is well settled that the interpretation of the language of a contract is a question of law and not a question of fact. *A & K Plumbing and Mechanical, Inc. v. United States,* 1 Cl.Ct. 716, 719–721 (1983). However, in the present case, the pleadings before the court are inadequate to allow a ruling without more information. Findings

---

dealing which is of "such regularity of observance in a . . . trade as to justify an expectation that it will be observed with respect to the transaction in question." U.C.C. § 1–205(2).

of fact are required regarding several contract provisions in order for the court to rule as a matter of law whether the provisions are reasonably susceptible to more than one interpretation, and if so, what is the proper interpretation.

■ What is reasonable in a given set of circumstances is an issue of fact. *Chernick v. United States,* 178 Ct.Cl. 498, 504, 372 F.2d 492, 496 (1967); *see, e.g., Metric Construction Co. v. United States,* 1 Cl.Ct. 383, 398–99 (1983) (reasonableness of costs); *Sundstrand Turbo v. United States,* 182 Ct.Cl. 31, 47, 389 F.2d 406, 415 (1968) (reasonableness of time). Similarly, trade usage is a factual issue which must be proven. U.C.C. § 1–205(2) and (6). *See also* Bigham, *Presumptions, Burden of Proof and the Uniform Commercial Code,* 21 Vand.L. Rev. 177 (1968).

Suffice it to say that such factual issues should be resolved and the true facts determined at trial on the basis of the preponderance of the evidence. *Robinson v. United States,* 1 Cl.Ct. 440, 442 (1983). In *Metric Construction Co. v. United States,* 1 Cl.Ct. 383 (1983), the Claims Court was faced with a similarly conflicting record as to the reasonableness of certain costs incurred by a contractor. The plaintiff supported its interpretation of reasonable costs with letters and affidavits while the defendant submitted an affidavit supporting its position that standard industry practice was to charge less than was claimed. The court concluded that the presence of this disputed fact precluded the rendering of summary judgment.

In like manner, where it appears, as it does from the record before the court, which must be interpreted in a light most favorable to defendant, that there are material factual issues in dispute, summary judgment is inappropriate. *South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 290 (1982); *Louisiana-Pacific Corp. v. United States,* 228 Ct.Cl. 363, 369, 656 F.2d 650, 654 (1981).

It is, therefore, ordered, on careful consideration of the briefs and oral argument of the parties, that plaintiff's motion for summary judgment is denied.

IT IS SO ORDERED.