JEPPESEN SANDERSON,
INC., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 11–87C.

United States Claims Court.

April 19, 1988.

Gregory C. Read, San Francisco, Cal., for plaintiff.

Helene M. Goldberg, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

FUTEY, Judge.

This action is before the court on cross-motions for summary judgment. Plaintiff seeks to recover the full amount of a judgment rendered against it by the district court for the Northern District of California in a tort action in which the government was a co-defendant. Plaintiff's claim is based on an indemnity agreement entered into by plaintiff and the government prior to the judgment entered in the district court case, which the plaintiff requests be enforced or reformed. Defendant asserts that the agreement may not be enforced due to an unfulfilled condition precedent, and that reformation is not an available remedy. For the reasons discussed hereinafter, the court grants defendant's motion for summary judgment.

## FACTS

On September 8, 1973, a World Airways cargo aircraft crashed into Mt. Dutton near Cold Bay, Alaska. All six individuals aboard the aircraft were killed, and the aircraft and its contents were destroyed. World Airways and the heirs of the individuals who were killed in the crash instituted separate tort actions against both Jeppesen and the government. These actions were consolidated for trial into *Barbara Brocklesby v. Jeppesen & Company*, Action No. C 74-1874-SC in the United States District Court for the Northern District of California.[1] In the tort action plaintiffs contended that the instrument approach procedure utilized by the World Airways pilot was unsafe, deficient and defective.

The Federal Aviation Administration (FAA), pursuant to 14 C.F.R. Part 97, designs and publishes standard instrument approach procedures for pilots landing at airports when they have no visual reference to the ground and must depend upon instruments for navigation. These procedures, which are described in tabular form on the FAA's form number 8260–5, include courses, minimum altitudes, and other necessary data to describe the procedure. The government also publishes other documents relevant to approach procedures, including the Notice to Airman (NOTAM), which contains some information not found in Form 8260–5. The foregoing data is utilized by chartmakers to design pictorial approach charts.

Jeppesen Sanderson, Inc. (Jeppesen), a publisher of aeronautical charts, published an instrument approach chart in 1971 for runway 32 at Cold Bay, Alaska. This chart graphically represented the FAA's instrument approach procedure described on the Form 8260–5, but did not incorporate other information found in the FAA's NOTAM.[2] On the flight at issue, the pilot of the World Airways plane was using the approach chart which Jeppesen had created.

In October 1982, the government and Jeppesen entered into a "Stipulation of Compromise Settlement" (agreement).

---

1. The claim against the government was brought under the Federal Tort Claims Act. Thus, the plaintiff had no right to a jury trial on that claim. *See* 28 U.S.C. § 2402. As a result, the proceeding was bifurcated. The claim against Jeppesen was decided by a jury, and the claim against the government was to be decided by the judge.

2. The FAA NOTAM for runway 32 at Cold Bay, Alaska, specifically warns that navigation signals can not be intercepted in the vicinity of the initial approach fix at an altitude of less than 5500 feet. The World Airways plane crashed at an altitude of approximately 3500 feet. Although Jeppesen's catalog states that their charts contain "EVERYTHING you need for a smooth transition from enroute approach segment of your flight," this altitude approach information was not included in Jeppesen's chart for runway 32.

This agreement provided that the government would indemnify Jeppesen for that percentage of the judgment rendered as a result of the approach procedure as described on the Form 8260–5, which Jeppesen published, if it was found to be a proximate cause of the accident. Pursuant to this agreement Jeppesen agreed not to cross-claim against the government.[3] The agreement further provided that prior to the jury's verdict the parties would decide on a suitable method of determining the extent of the government's liability. This could include submitting special interrogatories to the jury, or in lieu of special interrogatories submitting the matter to the trial judge after verdict. Although the indemnity agreement was signed in October 1982, the court was not made aware of it until April 1983, on the eve of trial.

Prior to the jury's verdict the government and Jeppesen agreed upon special interrogatories to be submitted to the jury for purposes of rendering the factual findings required in the agreement. The trial judge originally indicated a willingness to submit these special interrogatories, but later decided that the indemnity issue was not properly before the court since neither defendant had filed a cross-claim. Thus, he refused to submit the interrogatories to the jury. He also declined to decide the indemnity issue himself. On June 27, 1983, after a 49 day trial, the jury returned a general verdict against Jeppesen in the amount of $11,630,000. At the close of trial the judge suggested possible alternatives for handling the indemnity issue, but the co-defendants were evidently unable to agree on an alternative procedure. The government then indicated to Jeppesen that it believed the indemnity agreement had become unenforceable and it intended to enter into settlement negotiations with the plaintiffs. As a result of these negotiations the government settled the claim against it for $5 million.

Jeppesen moved the district court for enforcement of the indemnity agreement on August 1, 1983. The court denied this motion, again stating that the issue of indemnity was not properly before the court. On August 12, 1983, the district court awarded pre-judgment interest in the amount of $6,155,580.81 to World Airways on its claim for the market value of the aircraft, and after crediting the $5 million settlement of the government, the district court entered a final judgment of $12,785,-580.81 against Jeppesen.

Jeppesen appealed to the United States Court of Appeals for the Ninth Circuit, which affirmed the district court. The Ninth Circuit held, *inter alia*, that the record provided sufficient evidence on which the general verdict could stand, and that the district court judge had committed no errors in the exercise of his discretion. In addition, it concluded that the district court did not have jurisdiction over the indemnity agreement since the claim against the United States exceeded $10,000. *Brocklesby v. United States*, 767 F.2d 1288 (9th Cir.1985).

## DISCUSSION

This court has exclusive jurisdiction over claims against the United States not sounding in tort for monetary damages over $10,-000. 28 U.S.C. § 1491. Thus, Jeppesen's claim against the government based on the indemnity agreement is properly before this court.

Summary judgment is appropriate where there are no disputed issues of material fact and the only issue for the court is the construction of an unambiguous writing. *Brame v. United States*, 10 Cl.Ct. 252, 254 (1986); *South Louisiana Grain Services, Inc. v. United States*, 1 Cl.Ct. 281, 289 (1982). *See generally, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Marquardt Co. v. United States*, 822 F.2d 1573 (Fed. Cir.1987). Where there is a question on a motion for summary judgment of construction of a written contract, and it can be determined by consideration of the plain

---

**3.** Paragraph 7 of the indemnity agreement reads as follows:

Jeppesen agrees not to pursue any indemnity or contribution actions against the United States premised on any theory whatsoever.

and unambiguous wording of the contract, the question is one of law to be resolved by the court. *Ceccanti, Inc. v. United States,* 6 Cl.Ct. 526, 528 (1984) ("It is well settled that the interpretation of a contract is a question of law."); *D & S Universal Mining Co. v. United States,* 4 Cl.Ct. 94, 96 (1983).

The indemnity agreement between the government and Jeppesen explicitly provided that the government would indemnify Jeppesen only for that portion or percentage of the judgment which the trier of fact found attributable to the government. The agreement does not require the government to indemnify Jeppesen for that portion of the judgment rendered against Jeppesen for its own negligence. Paragraph 9 reads as follows:

The United States will not indemnify Jeppesen for that portion or percentage of any judgment rendered against Jeppesen because the jury finds that one or more of the following was a proximate cause of the accident:

a. Jeppesen's failure to accurately portray on its instrument approach chart the instrument approach as set forth by the FAA on said Form 8260–5, or

b. the manner in which Jeppesen graphically portrayed on its instrument approach chart the instrument approach procedure as set forth on said Form 8260–5, or

c. the format chosen by Jeppesen to publish on its approach chart the information contained on said Form 8260–5, or

d. Jeppesen's inclusion, or failure to include, any information on its instrument approach chart which was not published as part of the instrument approach procedure, including transitions thereto, on said Form 8260–5.

The agreement conditions the government's obligation to indemnify Jeppesen on a finding by the trier of fact that the FAA approach procedure, which Jeppesen's chart portrayed, was the proximate cause of the accident. Paragraph 8 reads as follows:

The United States expressly agrees that it will indemnify and hold Jeppesen harmless from that portion or percentage of any final judgment rendered against Jeppesen in any of the above-entitled actions because it was the publisher, seller or distributor of an approach chart portraying said instrument approach procedure, *if the design* of that procedure by the FAA as described on Form 8260–5 *is found by the trier of fact to be a proximate cause of the accident.* This indemnity agreement applies to any such judgment, or portion thereof, rendered against Jeppesen under the conditions described above, whether based upon a theory of negligence, strict liability or breach of warranty. (Emphasis added.)

Thus, the government's obligation to indemnify Jeppesen is subject to a condition. Both parties agree that a finding must be made by the trier of fact that the FAA procedure was the proximate cause of the accident before an obligation on the part of the government to indemnify Jeppesen arises. As a result of the trial judge's refusal to submit the special interrogatories to the jury, or decide the issue himself, there was no specific finding on the issue of proximate cause.

Plaintiff contends that the agreement did not require a written finding by the trier of fact, just a decision, conclusion or determination by the jury as a group. Although a written finding was not specified in the agreement, the jurors' determination must have been communicated to the court in some fashion in order to fulfill the condition of a finding by the trier of fact within the meaning of the agreement. Plaintiff asserts that the trier of fact necessarily determined the question of proximate cause in its favor in reaching the general verdict.

This court does not agree. The district court case was submitted to the jury on three theories of liability: strict liability, breach of warranty, and negligence. The jury's verdict itself does not address the issue of proximate cause. The nature of a general verdict is such that it encompasses all theories of liability submitted. A general verdict can not stand if any of the theories are found to be legally defective. *See*

*Sunkist Growers, Inc. v. Winckler & Smith Citrus Products Co.*, 370 U.S. 19, 29–30, 82 S.Ct. 1130, 1136, 8 L.Ed.2d 305 (1962). On appeal, the Ninth Circuit found sufficient evidence to support each of the theories of liability and thus upheld the jury's verdict. *Brocklesby v. United States*, 767 F.2d at 1294–97.

■ Jeppesen now wishes to offer post-trial affidavits of the jury members to prove that they did in fact decide the issue of proximate cause in favor of Jeppesen. Plaintiff contends that these statements can suffice for the required findings. However, post-trial juror statements secured by one of the parties, half of which were obtained four years after trial, do not constitute the finding of fact that the agreement envisioned. Nor can they substitute for this finding. The juror affidavits were not made in the regular decision-making process of the jury and are not what the government bargained for in the agreement. *See* Stipulation of Compromise Settlement, *Barbara Brocklesby v. Jeppesen & Company*, Action No. C 74–1874–SC.

For this court to find an obligation on the part of the government to indemnify Jeppesen, it would necessarily have to determine Jeppesen was not negligent. Such a determination would represent a direct attack on the jury verdict and the opinion of the Court of Appeals. The Claims Court, as a federal trial court, has no jurisdiction to review the decisions rendered by other federal courts. 28 U.S.C. § 1491; *Bayshore Resources Co. v. United States*, 2 Cl.Ct. 625, 640 (1983); *Carney v. United States*, 462 F.2d 1142, 199 Ct.Cl. 160, 162 (1972).

Since the question of proximate cause was not answered by the trier of fact, the condition for implementation of the indemnity agreement has not been fulfilled. Nor can this condition, which is central to the agreement, be excused. The non-occurrence of a condition precedent to a contract releases the contracting parties from an otherwise binding obligation. *Peoples Bank and Trust Co. v. United States*, 11 Cl.Ct. 554, 567 (1987), *Korea Development Corp. v. United States*, 9 Cl.Ct. 167, 175–

76 (1985). Thus, the government is released from any obligation under the terms of the agreement herein.

■ In the alternative, plaintiff asks that this court reform the agreement so as to establish a reasonable method for determining what portion of the judgment it should be indemnified by the United States. Reformation is an extraordinary remedy and is not available to rewrite a contract to cover unforeseen contingencies. *See American Employers Insurance Co. v. United States*, 812 F.2d 700, 705 (Fed.Cir. 1987). Jeppesen argues that the parties were mutually mistaken about a basic fact that was material to the agreement. In the case at bar, however, submitting the special interrogatories to the jury or having the trial judge decide the indemnity issue was never a fact, but a prediction as to how the trial judge would act. Thus, the parties made a mistake of judgment, not of fact. Mistake in judgment as to the occurrence of future events does not provide a basis for reformation. *Liebherr Crane Corp. v. United States*, 810 F.2d 1153, 1157 (Fed.Cir.1987).

■ In addition, contract reformation is only appropriate when it can be shown by clear and convincing evidence that the parties intended to be bound by the terms of the agreement as reformed. *Bromion, Inc. v. United States*, 411 F.2d 1020, 1022–23, 188 Ct.Cl. 31, 36 (1969). There is abundant evidence in this case that the parties were not able to decide on an alternative method of determining indemnity after the trial. This court will not presume to impose an alternative method when the parties themselves could not agree.

## CONCLUSION

The court finds no material facts in dispute nor any ambiguity in the indemnity agreement at issue herein. Thus, this action involves a question of law which is ripe for disposition by summary judgment.

Accordingly, the court grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary

judgment. The clerk is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.