**JEPPESEN SANDERSON, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 11–87C.**

United States Claims Court.

Jan. 10, 1990.

---

Gregory C. Read, San Francisco, Cal., atty. of record, for plaintiff. Nicholas W. Heldt and Sedgwick, Detert, Moran & Arnold, San Francisco, Cal., of counsel.

Asst. Director Helene M. Goldberg, with whom was Acting Asst. Atty. Gen. Stuart E. Schiffer and David M. Cohen, Director, Washington, D.C., of counsel, for defendant.

## OPINION

FUTEY, Judge.

This matter is before the court on plaintiff's motion for summary judgment, following vacation of judgment by the Court of Appeals for the Federal Circuit of *Jeppesen Sanderson, Inc. v. United States*, 14 Cl.Ct. 624 (1988). This court had previously found that, since the finder of fact in the district court proceeding had not allocated liability between the parties as provided in an indemnity agreement between them, the agreement had become unenforceable for failure of condition. The case was remanded by the Federal Circuit with instructions to reform the agreement. *Jeppesen Sanderson, Inc. v. United States*, [868 F.2d 1277 (Table)] No. 88–1452, slip op. at 3 (Fed.Cir. Feb. 6, 1989). Plaintiff's motion here posits that since post-trial juror affidavits indicating a determination of defendant's liability are available, this court must find the condition fulfilled and award full indemnity to plaintiff. Defendant argues that these affidavits are inadmissible and inappropriate to fulfill the condition requiring findings by the trier of fact. For the reasons given herein, this court denies plaintiff's motion for summary judgment.

## Factual Background

This case first came before this court on January 12, 1987. An opinion granting defendant's motion for summary judgment was filed on April 19, 1988. *Jeppesen Sanderson, Inc. v. United States*, 14 Cl.Ct. 624 (1988). Since a full statement of the facts in the case was made a part of that earlier opinion, they will be given only an overview here.

On September 8, 1973, a World Airways cargo aircraft crashed, killing all six people aboard. At the time of the crash, the pilot was utilizing an instrument approach procedure which was published by plaintiff, and was based largely on information supplied by the Federal Aviation Administration (FAA). World Airways and the heirs of the decedents sued both Jeppesen and the government in tort actions in the United States District Court for the Northern District of California. The trial was bifurcated since there is no right to jury trial under the Federal Tort Claims Act, codified at 28 U.S.C. § 2402, which governs the claim against the government.

Prior to the trial, the two defendants in that action entered into a "stipulation of compromise settlement". (stip. of compro-

mise)[1] which provided, *inter alia,* that Jeppesen relinquished any right it might have to proceed against the government for indemnity or contribution[2] in exchange for an undertaking by the government to indemnify[3] Jeppesen for that part of any judgment against it which the trier of fact found had been proximately caused by the information supplied to Jeppesen by the FAA.[4]

The parties subsequently agreed, pursuant to ¶ 10 of the agreement, on special interrogatories to be submitted to the jury in order to fulfill the condition of the compromise settlement. However, the trial judge decided that since neither defendant had filed a cross claim, the indemnification question was not before that court and, thus, the interrogatories should not be submitted to the jury, nor should he decide the question himself.

The district court jury returned a general verdict against Jeppesen for $11,630,-000.00. Believing that the agreement had become unenforceable, the government negotiated a settlement of the claim against it for $5 million. After adding pre-judgment interest, and crediting the government's settlement, the final judgment against Jeppesen was $12,785,580.81. That amount, plus post-judgment interest, was paid by Jeppesen in 1985.

Plaintiff appealed the judgment to the U.S. Court of Appeals for the Ninth Circuit, which affirmed the trial court's decision. The Circuit found that there was sufficient evidence upon which the jury could have found Jeppesen negligent in producing the instrument approach chart, and that the district court properly excluded the interrogatories since the court lacked jurisdiction of the indemnity agreement because it concerned an amount exceeding $10,000.00. *Brocklesby v. United States,* 767 F.2d 1288 (9th Cir.1985).

---

**1.** Also referred to here as the "agreement" or "indemnity agreement."

**2.** "Jeppesen agrees not to pursue any indemnity or contribution actions against the United States premised on any theory whatsoever." (Plaintiff's *Cross–Motion for Summary Judgment,* Appendix, filed July 17, 1987, Exhibit A, "stipulation of compromise settlement" (stip. of compromise at ¶ 7.)

**3.** The agreement states, in pertinent part: "The United States expressly agrees that it will indemnify and hold Jeppesen harmless from that portion or percentage of any final judgment rendered against Jeppesen in any of the above-entitled actions because it was the publisher, seller or distributor of an approach chart portraying said instrument approach procedure, if the design of that procedure by the FAA as described on Form 8260–5 is found by the trier of fact to be a proximate cause of the accident. This indemnity agreement applies to any such judgment, or portion thereof, rendered against Jeppesen under the conditions described above, whether based upon a theory of negligence, strict liability or breach of warranty." (stip. of compromise at ¶ 8.)

"The United States will not indemnify Jeppesen for that portion or percentage of any judgment rendered against Jeppesen because the jury finds that one or more of the following was a proximate cause of the accident:
  a. Jeppesen's failure to accurately portray on its instrument approach chart the instrument approach procedure as set forth by the FAA on said Form 8260–5,
or
  b. The manner in which Jeppesen graphically portrayed on its instrument approach chart the instrument approach procedure as set forth on said Form 8260–5,
  or
  c. The format chosen by Jeppesen to publish on its approach chart the information contained on said Form 8260–5, or
  d. Jeppesen's inclusion, or failure to include, any information on its instrument approach chart which as not published as a part of the instrument approach procedure, including transitions thereto, on said Form 8260–5." (stip. of compromise at ¶ 9.)

**4.** Also the agreement states: "Prior to the jury's verdict, the parties to this agreement will agree upon a suitable method of determining that portion or percentage of any judgment rendered against Jeppesen which is subject to indemnity pursuant to paragraph (8). This may include submitting agreed upon special interrogatories to the jury, or agreeing that this apportionment will be decided by the trial judge, consistent with this agreement, subsequent to the jury's verdict.

If no agreement can be reached prior to the jury's verdict, this question will be submitted to the trial judge and he shall determine, consistent with the intent of the parties as set forth herein, a reasonable method for determining which portion of any judgment rendered against Jeppesen will be subject to indemnity by the United States pursuant to paragraph (8)." (stip. *of compromise* at ¶ 10.)

On January 12, 1987, Jeppesen filed a complaint in this court seeking enforcement of the parties' indemnity agreement, or for its reformation due to a mutual mistake of fact. On cross-motions for summary judgment, the court held that the trier of fact's failure to make the required finding was a nonperformance of a condition precedent to the indemnity agreement. *Jeppesen Sanderson, Inc.,* 14 Cl.Ct. at 627–28. "This failure released the contracting parties from an otherwise binding obligation." *Id.* at 628.

The court further found that reformation of the agreement would be inappropriate. Plaintiff had obtained post-trial affidavits from members of the district court jury concerning their positions on the extent to which the defectiveness of the approach chart was due to the information furnished to Jeppesen by the FAA, and urged this court that these affidavits satisfy the condition of the agreement. However, since the affidavits were not a product of "the regular decisionmaking process of the jury and are not what the government bargained for in the agreement", they could not form the basis of a reformed agreement.

The Court of Appeals for the Federal Circuit, in reversing, held that there had been a mutual mistake of fact as to the competence of the district court to find the facts required by the indemnity agreement, and, thus, reformation was justified. The reformation directed by the appellate court was that the Claims Court was to substitute itself for the district court as the fact finder within contemplation of the agreement, and "to determine that portion, if any, of the judgment for which Jeppesen must be indemnified." *Jeppesen Sanderson, Inc. v. United States* [868 F.2d 1277 (Table)] No. 88–1452, slip op. at 3 (Fed.Cir. Feb. 6, 1989).

On July 7, 1989, plaintiff renewed its motion for summary judgment to this court, claiming that since uncontroverted evidence resolving the indemnity question exists in the form of the juror affidavits, the court should award plaintiff one hundred percent (100%) indemnity of the $12,-785,580.00 paid in damages.

The issue here, whether this court may resolve an indemnity question properly before it based on affidavits of district court jurors who heard evidence on a closely related issue between the same parties, is actually comprised of two questions. First, are post-trial affidavits admissible evidence? And second, are they competent evidence where the question for which they are presented was not before the court in which the jury was impaneled?

*Discussion*

In the opinion remanding this case, the Federal Circuit directed the "Claims Court to determine that portion, if any, of the judgment for which Jeppesen must be indemnified." *Jeppesen Sanderson, Inc.,* slip op. at 3. Such a determination necessarily incorporates an inquiry into apportionment of liabilities because the language of ¶¶ 8 and 9 of the indemnity agreement speak of a portion or percentage of the judgment for which defendant may be liable and because of the use of the same term by the Federal Circuit. Such apportionment is unquestionably a tort issue. Therefore, a jurisdictional dilemma is apparent because under the Tucker Act, codified at 28 U.S.C. § 1491(a)(1) (1982), the Claims Court's Congressional grant of power specifically excludes cases which sound in tort. Although the dilemma is more apparent than real, nevertheless this question must be laid to rest because a court is obligated to assure itself that it has jurisdiction of an issue before addressing its merits. *Hambsch v. United States,* 857 F.2d 763, 863 (Fed.Cir.1988).

Jeppesen argues that this court's jurisdiction cannot now be challenged since that issue was settled by the ruling in *Brocklesby v. United States,* 767 F.2d 1288 (9th Cir.1985). That is, when the Ninth Circuit determined that the enforceability of the indemnity agreement encompassing an amount greater than $10,000.00[5] was beyond the jurisdiction of the district court,

**5.** *See* 28 U.S.C. §§ 1346(a)(1) and 1491(a)(1).

the existence of jurisdiction in the Claims Court over the issue was thereby established and has *res judicata* effect in the action at bar.

■ There are several problems with this argument. First, determination that the district court lacks jurisdiction of a question is not the equivalent of a determination that the Claims Court does have jurisdiction over it. Second, since Congress alone has the power to confer jurisdiction on a federal court, this court must consider its power to adjudicate the present matter only in light of an examination of the statutes circumscribing that power. Finally, neither actions of the parties nor of other courts can confer jurisdiction on this court where it does not otherwise exist. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982).

Defendant addresses the jurisdiction question simply. Although Jeppesen may at one time have had viable tort claim against the government, it voluntarily precluded itself from pursuing it. "Jeppesen agrees not to pursue any indemnity or contribution actions against the United States premised on any theory whatsoever." (stip. of compromise at ¶ 7.) Since plaintiff's action in the case at bar is for the enforcement of the compromise settlement, which the parties agree is a contract, jurisdiction exists.

It is well established that where the injury complained of resulted from a tortious breach of contract (i.e. where the obligation breached arose from contractual privity rather than from a tort duty), the Claims Court may exercise jurisdiction. *See, e.g. Gregory Lumber Co. v. United States*, 9 Cl.Ct. 503 (1986); *H.H.O., Inc. v. United States*, 7 Cl.Ct. 703 (1985). These cases have in common a requirement that there be a close connection, or nexus, between the provisions of the contract and the alleged tortious conduct.

■ Although it could be argued that such cases are inapposite since in each instance the contractual relationship preexisted the tortious act while in the case at bar the contract came into being only after,

and because of, the occurrence of the tort, the critical element is the close relationship between subject matter over which jurisdiction is clear, and the tort. Thus, Claims Court jurisdiction has been found to exist over an action for a misrepresentation which formed a part of the contract itself, *Hartle v. United States*, 18 Cl.Ct. 479 (1989); and over an implied contract to return money which arose from the tortious act of appropriating it. *Kirkendall v. United States*, 90 Ct.Cl. 606, 31 F.Supp. 766 (1940). Here the relationship could not be closer: but for the tortious act(s) resulting in a defective instrument approach chart, there would have been no indemnity agreement between the two parties whose efforts produced the chart. The determination of relative fault as a necessary precursor to the interpretation of that agreement is, therefore, within the power of this court.

### A.

■ In the seminal case considering the question of when it is appropriate for a court to look at post-verdict statements of jurors, the Supreme Court affirmed a trial court's refusal to hear testimony of juror misconduct. *McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). The Court stated that the traditional rule that a juror may not impeach his own verdict remains controlling even though injustice may be done by its enforcement to a party wronged by that misconduct. The basis for the strong reluctance of courts to hear such evidence is based in policy considerations: avoidance of harassment of former jurors, avoidance of inhibition of free exchange of ideas within the jury, and a promotion of finality of litigation. *Attridge v. Cencorp. Div. of Dover Tech. Intern.*, 836 F.2d 113, 116 (2nd Cir.1987). Acceptance of post-trial juror statements is thus an exception to the general rule to be considered by a court only "in the gravest and most important cases ..." *McDonald* 238 at 269, 35 S.Ct. at 785. While declining to delineate when the exception would properly be invoked, the Court found that the case before it was not such a case.

Later cases have established that the "veil" of the jury room is properly pierced when there is an issue as to improper influence on, or consideration of matters not properly before them by, the jury. Issues of how a juror considered the evidence presented, even if based on misconception or prejudice, in reaching his conclusion, is always unavailable to scrutiny. *See Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481 (3d Cir.1985); *Freid v. McGrath,* 135 F.2d 833, 834 (D.C.Cir.1943); *Southern Pac. Co. v. Klinge,* 65 F.2d 85, 88 (10th Cir.1933). This distinction was adopted by the Federal Rules of Evidence which preclude a juror from testifying to his mental operations but "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed.R. Evid. 606(b).

One basis upon which defendant relies in seeking to foreclose consideration of the juror affidavits in the case at bar is that they are precluded by Rule 606(b). Plaintiff first responds that Rule 606(b) applies only in situations where the validity of a verdict is challenged. Here, since plaintiff paid the amount the *Brocklesby* jury awarded, plaintiff is not here challenging that verdict and, thus, Rule 606(b) does not apply. Defendant counters by pointing to the fact that the appellate court in *Brocklesby* found sufficient evidence introduced to support each of the three theories of negligence argued and, thus, it upheld the jury verdict against Jeppesen. Plaintiff's position in the case at bar, defendant continues, that the jury affidavits support the contention that Jeppesen produced the navigation charts without fault and is, therefore, entitled to indemnification, necessarily implies an attack on the validity of the *Brocklesby* verdict and invokes Rule 606(b).

Although intellectually interesting, defendant's position does not withstand close examination. The trial judge charged the jury:

The manufacturer of a product is strictly liable for defects in that product even though the defect can be traced to a component part supplied by another. Thus if you find that Jeppesen's instrument approach chart is defective and that the defect was a proximate cause of the accident, you must find Jeppesen liable even if the defect exists only because you find that the FAA designed an approach procedure that you find is itself defective. The issue is: was the Jeppesen chart defective?

The jury's finding that the chart was defective and its publisher liable in damages to survivors does not, therefore, make any implied statement as to fault, but merely that the chart was defective. The court finds that the attempt to introduce the juror affidavits, which do in fact concern fault, does not implicate a challenge to the verdict's validity and, thus, the affidavits are not precluded from our consideration by Rule 606(b).

Although Rule 606(b) does not apply, the policy considerations underlying the Rule do apply. Two of these considerations are: protecting a jury member from harassment; and second, protecting the deliberative process from subsequent scrutiny when there is no suggestion of improper influence. Both of these considerations are applicable here.

### B.

The fact that the juror affidavits are not offered as a challenge to the *Brocklesby* verdict finding Jeppesen liable for negligence, but are rather offered as proof on the issue of relative fault is why, ultimately, they cannot be considered by this court. In the cases upon which the parties rely, and in the situations encompassed by Rule 606(b), the juror statements sought to be introduced are those that underlie the verdict of that jury, and are presented to the court which rendered that verdict. That is, they are of interest because, *inter alia,* they indicate improper influence on the jury that rendered that verdict, or indicate that the verdict as reported was not what the jury intended. In no case cited to us, or which the court has researched, are jury statements from one case urged for consid-

eration in rendering a decision in another case. While it may be argued that considerations of judicial economy favor the acceptance of affidavits concerning the issue before a court from jurors who have already heard evidence marshalled by the parties, such considerations do not carry us that far.

Plaintiff strenuously urges the court that, even though the Northern District of California had no jurisdiction over the indemnity agreement, the juror's affidavits indicating their purported findings on the proximate cause issue retain viability. According to Jeppensen, this court held that a condition in the parties' stipulation of compromise settlement *required communication* of findings by the jury to the district court. Jeppesen argues that this holding was overruled by implication of the Federal Circuit's decision; therefore, the indemnity question can be determined by the jury's findings, *whether or not* they were *communicated* to the court.

The difficulty with this argument is that it would have merit only if this court's opinion had been grounded on the hypertechnical interpretation of the contract's condition that plaintiff's argument implies. In fact, the opinion simply found failure of the condition that the district court, as a court of law, must interpret the indemnity agreement. This court refused to reform the contract because if it did, it would have substituted a condition to which the parties had not agreed.[6] In reversing, the Federal Circuit, again simply, stated that the contract was indeed subject to reformation since the parties to it had been mutually mistaken as to the capacity of the district court to interpret the contract. The remand to this court "to determine that portion, if any, of the judgment for which Jeppesen must be indemnified" is clear on its face and cannot reasonably be interpreted to contain an implication that determination is to be controlled by opinions of a jury found incompetent to address the issue of indemnification. *Jeppesen v. United States* [868 F.2d 1277 (Table)] No. 88–1452, slip op. at 3 (Fed.Cir. Feb. 6, 1989).

Affidavits from former members of the jury are by their nature taken outside the sanctity of the jury room, and are the products of individual thoughts and memories rather than of group deliberations. Thus, they lack that which makes jury verdicts uniquely worthy of respect. "[T]he essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common sense judgment of a group of laymen, and in the community participation and shared responsibility that results in that group's determination of guilt or innocence." *Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1905, 26 L.Ed.2d 446 (1970). In the case before this court, the jury undoubtedly did discuss the issue of defendant's role in the creation of what was found to be a defective instrument approach chart, and knowing the substance of that discussion would be interesting and instructive. However, it falls into the category of the mental processes which lead a juror to assent to a verdict, which processes are specifically excluded from later inquiry. 8 J. Wigmore § 2340 (McNaughton Rev.1969).

### Conclusion

For the foregoing reasons, this court determines that the proffered jury affidavits cannot be used as the basis for apportioning liability between the parties. Since genuine issues of fact remain to be resolved, plaintiff's motion for summary judgment is denied.

---

**6.** In addition, this court held that the parties made a mistake of judgment and not a mistake of fact about the capacity of the district court. Consequently, this court declined to reform the contract, since "mistakes in judgment as to the occurrence of future events does not provide a basis for reformation." *Jeppesen Sanderson, Inc. v. United States,* 14 Cl.Ct. 624, 628 (1988) (citation omitted).