Robert BADGLEY and Colleen
Badgley, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 90–265 C.

United States Court of Federal Claims.

June 24, 1994.

David A. Ross, Santa Cruz, CA, for plaintiffs.

Jeffrey J. Bernstein, with whom were Asst. Atty. Gen. Frank W. Hunger, Stuart E. Schiffer, David M. Cohen and Jeanne E. Davidson, Washington, DC, for defendant; David Fishman, Small Business Admin., of counsel.

## OPINION and ORDER

TURNER, Judge.

This opinion addresses defendant's motion for summary judgment filed on June 1, 1993. We conclude that defendant's motion should be granted.

### I

On April 8, 1988, Robert and Colleen Badgley (plaintiffs) and the United States Small Business Administration (SBA) entered a contract for the sale of certain real property to plaintiffs. The events prior to and surrounding execution of the contract are as follows.

Before the submission of an offer by plaintiffs, Robert Badgley had several conversations with Benny A. Gutierrez, an authorized agent of the SBA,[1] concerning the purchase of real property located at 182 Sylvan Way, Felton, CA. Pl.Br., Appendix at 12 (Affidavit of Robert Badgley). During the course of the conversations, Gutierrez notified Robert Badgley that there was a non-conforming unit on the Sylvan Way property. *Id.*

Plaintiffs tendered to Gutierrez on a real estate purchase contract form dated February 4, 1988, an offer to purchase the property described as "LOT & IMPROVEMENTS AT 182 SYLVAN W[A]Y APN 65–142–05" for $135,000.[2] Def.Br., Appendix at 8–9. In paragraph 22, under "OTHER TERMS AND CONDITIONS," plaintiffs listed the following:

---

1. From January 21, 1986 to September 26, 1989, Gutierrez was employed by the SBA's San Francisco District Office, holding the position of Loan Specialist in the SBA's Portfolio Management Division. As Loan Specialist, Gutierrez "was responsible for the over-all administration of the liquidation of loan portfolios." Def.Br., Appendix at 1.

2. Defendant has attached only pages 1 and 4 of the February 4, 1988 offer. Def.Br., Appendix at 8–9.

(1) BUYERS TO OBTAIN ACCESS TO PROPERTY FOR APPRAISAL WITHIN 60 DAYS OF ACCEPTANCE. (2) BUYERS ARE AWARE THAT ONE UNIT IS NON-CONFORMING AND IS CURRENTLY OCCUPIED WITHOUT PERMISSION. (3) BUYER IS A LICENSED REAL ESTATE AGENT AND IS PURCHASING PROPERTY FOR INVESTMENT FOR PROFIT OR LOSS. (4) BUYER IS AWARE THAT PROPERTY IS IN THE FLOOD PLAIN, AND THE CLASS ONE SEWER DISTRICT.[3]

*Id.* at 9. Plaintiffs' initial offer was found unacceptable. However, negotiations continued including further talks concerning the Sylvan Way property's various problems. *Id.* at 4 (Declaration of Gutierrez).

Gutierrez submitted a counter-offer on March 9, 1988. Pl.Br., Appendix at 19. The counter-offer provided that plaintiffs would pay $135,000 for the property "as-is, where-is."[4] *Id.* In addition, the counter-offer incorporated by reference plaintiffs' February 4 offer. *Id.* On April 8, 1988, plaintiffs accepted SBA's counter-offer by inscribing directly upon the March 9, 1988 letter the word "accepted," followed by their signatures and the date. *Id.*

On April 26, 1989, presumably after plaintiffs acquired title to the property, Santa Cruz County issued to plaintiffs a Stop Work/Violation Notice and a notice of intent to record violation. *Id.* at 35–36. The notices advised that a "second" structure located at 184 Sylvan Way on parcel number 65–142–05 was in violation of several local zoning provisions.[5] The structure at 184 Sylvan Way was the unit which the subject contract refers to as non-conforming.

Plaintiffs initiated this action on March 27, 1990. On February 12, 1991, plaintiffs filed an amended three-count complaint alleging 1) breach of contract, 2) mutual mistake, and 3) intentional misrepresentation. Each of the legal theories advanced by plaintiffs is ultimately premised on a single basic perception of the circumstances: that the contract provided that one occupied residential unit on the property constituted a "non-conforming use" as defined by local zoning ordinances[6] and thus *could* be used as a rental unit. *See generally* Amended Complaint (Am.Cplt.). Defendant has moved for summary judgment on all three counts.[7]

II

In the first count of their complaint, plaintiffs assert a claim for damages allegedly caused by SBA's breach of its obligation to "sell a property as it was described in the contract."[8] Am.Cplt. at 2, ¶ V. In the case

3. Plaintiffs have attached to their Brief a four page real estate purchase contract dated April 8, 1988. This appears to be an inadvertent mistake because on pages 2 and 5 of their brief, plaintiffs cite language that appears only in the February 4, 1988 offer which is attached to defendant's brief.

4. The counter-offer also required that plaintiffs assume responsibility for the failing septic system about which defendant had received a Notice to Repair from the County of Santa Cruz Public Health Sanitarian. Def.Br., Appendix at 7.

5. The notices stated that the structure located at 184 Sylvan Way violated several local zoning ordinances due to "Conversion of shed use structure to a second building unit without building permits, [or] inspections." Pl.Br., Appendix at 35–36. Code Enforcement Officer Ruth C. Owen of the Santa Cruz Planning Department issued the Stop Work/Violation Notice because the second unit on the property was built without a permit in violation of the Santa Cruz County Code. In addition, the second unit was built in a zone which allows one dwelling only on a lot the size of the subject property. *Id.* at 33–34 (Affidavit of Owen).

6. Pursuant to Santa Cruz's zoning ordinances, a "non-conforming" use or structure is one which although technically not in conformance with the zoning laws, is already existing when the zoning ordinance it violates took effect, and thus—through grandfather provisions of the zoning law—is permitted to remain in existence and use. Pl.Br. Appendix at 40–46.

7. Plaintiffs have not filed a cross-motion for summary judgment, see Joint Status Report filed June 1, 1993, nor have they filed a Statement of Genuine Issues pursuant to RCFC 56(d)(2).

8. Plaintiffs demand the following in damages:

| | | |
|---|---|---|
| a) | difference between the contract value and the actual value of the property | $ 50,000 |
| b) | cost of demolition | $ 8,000 |
| c) | cost of appraisal | $ 500 |
| d) | lost rent ($500/month for 52 years) | $312,000 |

Am.Cplt. at 2, ¶ VII.

at hand, the second unit's conversion to a dwelling occurred subsequent to enactment of the zoning provisions it violated; therefore, there is no dispute that the second unit was in fact an illegal structure. Pl.Br. at 3. Plaintiffs argue that the second unit on the Sylvan Way property was not a usable, non-conforming structure as defined in Santa Cruz's Code such as they bargained for in the contract; it was instead non-conforming in the usual sense of being an illegal unusable structure. Pl.Br. at 5. Defendant's understanding of the contract is different; defendant maintains that the contract did not provide that the property contain a unit which would be suitable as a rental unit and, therefore, plaintiffs received the property exactly as described in the contract, including an unusable, non-conforming unit. Def.Br. at 6–7.

### A

██ Where there is a question of construction of a written contract, and it can be determined by consideration of the plain and unambiguous wording of the contract, the question is one of law which can be resolved by the court on a motion for summary judgment. *National Rural Utilities Cooperative Finance Corp. v. United States,* 14 Cl.Ct. 130, 136 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir. 1989). Plaintiffs argue that the clause "BUYERS ARE AWARE THAT ONE UNIT IS NON–CONFORMING" must mean that plaintiffs knew the second unit was a non-conforming use as specially defined by Santa Cruz's ordinances. Pl.Br. at 5–6. We disagree: the plain and unambiguous language of this contract does not require SBA to convey property with a usable unit that is a non-conforming use in accordance with Santa Cruz's local grandfather clause ordinances. Plaintiffs' contention that paragraph 22 uses the term "non-conforming" in a specialized, local way is without merit.[9]

Plaintiffs base their claim on what they now assert to be the assumption under which they entered the contract: in his affidavit, Robert Badgley avers that because of the unit's historic use as rental property, he had no reason to doubt what he took to be Gutierrez's representation that it was non-conforming as provided for in the local ordinances. In addition, Badgley asserts that because the most frequent topic of negotiation had been the problem posed by the current, non-paying tenant, he saw no need to expressly ask Gutierrez whether the unit could be rented. Pl.Br., Appendix at 12–13.

██ We find plaintiffs' position unconvincing because "[a] party's subjective, unexpressed intent plays no role in interpreting a contract." *Sharpe Refrigeration, Inc. v. United States,* 30 Fed.Cl. 735, 738 (1994). If plaintiffs, one of whom is a licensed real estate agent, had intended the particular usage of "non-conforming" that they now urge, they could easily have included such a definition in the part of the contract which they themselves drafted. In fact, the contract contains no explanation of the meaning of the term "non-conforming," no reference to the grandfather ordinances and no quotation marks, underlining, or other indication that the term is intended to have a special, local meaning. Instead, we ascribe to the term its usual meaning: something non-conforming is

---

**9.** Moreover, the contract expressly states that the property is sold "as-is, where-is." Def.Br., Appendix at 7. "When the government sells property with such express disclaimers, the risk is on the purchaser." *Pia v. United States,* 7 Cl.Ct. 208, 211 (1985).

Plaintiffs argue that the as-is clause must be limited by what plaintiffs claim to be the express contractual representation that one unit is nonconforming as provided for in Santa Cruz's zoning ordinances. Pl.Br. at 6 (citing *C.J. Betters, Corp. v. United States,* 21 Cl.Ct. 378, 384 (1990) (holding that when a representation is part of a contract, established rules of contract law dictate reading that representation in harmony with the as-is clause to the extent it is reasonable to do

so), *vacated on other grounds,* 30 Fed.Cl. 438 (1994)). The holding in *Betters,* however, is distinguishable from the case at hand because *Betters* involved a situation in which it was impossible to give meaning to both a representation and an as-is clause contained in the contract at issue. Here, unlike *Betters,* we can harmoniously construe the as-is clause with the contract's representations. This is because plaintiffs have not demonstrated that the clause "BUYERS ARE AWARE THAT ONE UNIT IS NON–CONFORMING" is an inaccurate description of the second unit. Accordingly, we read the "as-is, where-is" disclaimer in harmony with the "BUYERS ARE AWARE THAT ONE UNIT IS NON–CONFORMING" clause.

simply something not conforming. *See Webster's Third New International Dictionary,* 1536 (1976). Plaintiffs have not proffered any evidence that shows they had intended a specialized meaning of non-conforming nor have they disputed the fact that SBA actually informed them during negotiations that the second unit was non-conforming because the previous owner had converted the original structure, which was zoned as a single family dwelling, into two independent units. Def. Br., Appendix at 2–3 (Declaration of Gutierrez).

■ In order for plaintiffs to recover for a breach, defendant must have failed to do something which is required under the contract. Plaintiffs have failed to demonstrate any such breach on the undisputed facts of this case. We find that plaintiffs received exactly what they bargained for, the "LOT & IMPROVEMENTS AT 182 SYLVAN W[A]Y APN 65–142–05" which includes a unit that does not conform to Santa Cruz's zoning ordinances, a condition they were alerted to during negotiations. Defendant did not breach the contract and thus is entitled to judgment as a matter of law on the first count.

### III

In the second count of their complaint, plaintiffs argue that they are entitled to rescission of the contract because of the parties' mutual mistake. Essentially, they assert that *both* parties were mistaken as to the situation which rendered the second building illegal rather than "non-conforming" in the specialized sense, and thereby not suitable for rental use. Plaintiffs claim that both parties intended to contract for a usable, non-conforming unit, not for the illegal, non-conforming unit that in fact existed. Furthermore, plaintiffs argue that this mistake was a basic assumption of the contract and that the mistake materially affected the bargain. Am.Cplt. at 2–4, ¶¶ VII–XIV.

### A

■ Rescission of a contract is appropriate where there has been a mutual mistake of fact, resulting in a contract which does not faithfully embody the parties' actual intent.

*Roseburg Lumber Co. v. Madigan,* 978 F.2d 660, 665 (Fed.Cir.1992). In order to avail themselves of the remedy of rescission, plaintiffs must satisfy four conditions. First, they must prove that the parties were mutually mistaken in their belief regarding a fact at the time the contract was made; second, that the mistake relates to a basic assumption on which the contract was premised; third, that the mistake had a material effect on the bargain; and fourth, that the mistake was not one as to which they bear the risk. *Dairyland Power Cooperative v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994).

■ This clearly is not a case of mutual mistake. There is nothing in the record to indicate that the SBA intended to convey a unit that was non-conforming pursuant to local zoning laws, or to indicate that the contract specified that the second unit was capable of being rented. It is uncontroverted that during the negotiations of the contract the SBA informed plaintiffs that the second unit was non-conforming. Furthermore, it is uncontroverted that defendant even explained to plaintiffs that the unit was non-conforming because the original structure was zoned for a single-family dwelling but its previous owner had converted it into two independent units. Def.Br., Appendix at 2–3 (Declaration of Gutierrez). Plaintiffs, one of whom is a licensed real estate agent, never questioned defendant's use of the term "non-conforming." *Id.* at 3.

■ Furthermore, plaintiffs' desire to use the second unit as a rental unit was never expressed to the SBA nor was it expressly stated in the contract. Plaintiffs did not ask defendant whether the second unit could be rented, nor do they allege that defendant made such a representation; instead they derive this conclusion from the fact that it had been rented in the past and that the unit continued to be occupied by a non-paying tenant. Pl.Br., Appendix at 12–13 (Affidavit of Robert Badgley). Plaintiffs cannot now credibly argue that both parties believed the contract warranted that the "non-conforming" unit was grandfathered pursuant to Santa Cruz's ordinances and was thus a legal rental unit.

**513**

■ Plaintiffs' contention that the clause "BUYER ... IS PURCHASING PROPERTY FOR INVESTMENT FOR PROFIT OR LOSS" indicates that they intended to use the property to generate rental income is likewise not enough to show mutual mistake. A desire to purchase property for investment purposes does not necessarily equate to a desire to rent the property. Defendant could just as easily have assumed that plaintiffs were planning to renovate the property to make it conform to local zoning laws and then sell it hoping to make a profit.

**B**

Since the usage of the second unit as a rental property was not expressly provided for in the contract and was not discussed in negotiations with defendant, plaintiffs' post-sale discovery that it could not be rented cannot show a mistake by the defendant or a mutual mistake of both parties. There is no evidence in the record that plaintiffs at any point in the negotiations raised any of the concerns they now raise. Plaintiffs' tacit assumption that the unit could be rented is not sufficient to establish an element of mutual mistake and thus is not in itself sufficient to raise a triable issue of fact. Defendant is entitled to judgment as a matter of law on the second count.

**IV**

The third count of plaintiffs' complaint asserts a claim for rescission of the contract based on a theory of intentional misrepresentation. Plaintiffs argue that "[d]efendant knew that the building was illegal and intentionally misrepresented its status to the Buyers" and that "[p]laintiffs believed the representations and relied on the truth of them in entering the contract." Am.Cplt. at 4–5, ¶¶ XV–XVI. Before we reach the merits of plaintiffs' claim we must address the jurisdictional challenge raised by defendant to this count. Defendant maintains that plaintiffs' third count sounds in tort and is therefore outside our jurisdiction. We disagree.

**A**

Defendant argues that plaintiffs' claim of intentional misrepresentation presupposes tortious conduct *before* the contract, and, therefore, no contractual duty could have been breached by the alleged misrepresentation pertaining to the second unit. Def.Br. at 14.

■ When presented with a similar proposition, i.e., that actions taken before there is a contractual relationship between the parties do not constitute a breach of contract, the Court of Claims replied:

> This is sheer sophistry. [The] Contract ... contained positive, but erroneous, representations upon which plaintiff in fact relied in bidding on, entering into and performing, the said contract. That those erroneous 'positive representations' were that defendant had taken certain actions prior to contract formation (parenthetically, a not unusual situation) is plainly no defense to an action for breach of contract based upon misrepresentation.

*Summit Timber Co. v. United States,* 230 Ct.Cl. 434, 439–40, 677 F.2d 852, 856 (1982) (footnote omitted).[10] Although in this case plaintiffs' claim is labeled "intentional misrepresentation," mere labelling does not in itself place the claim in the forbidden "sounding in tort" category.[11] We find that this

---

10. For other cases where this court exercised Tucker Act jurisdiction over claims for pre-contractual tort-like acts, see *Jeppesen Sanderson, Inc. v. United States,* 19 Cl.Ct. 233, 237 (1990) (stating that "where the contract came into being only after, and because of, the occurrence of the tort, the critical element is the close relationship between the subject matter over which jurisdiction is clear and the tort"); *Hartle v. United States,* 18 Cl.Ct. 479, 483 (1989) (exercising jurisdiction because the misrepresentation-in-inducement claim was contractual rather than tortious); *Levy v. United States,* 10 Cl.Ct. 602, 611 (1986) (granting jurisdiction despite plaintiffs' use of the

term "misrepresentation" to describe claim, because "it is clear that their underlying claim sounds squarely in the breach of the subsequent contract"); and *Gregory Lumber Co. v. United States,* 9 Cl.Ct. 503, 526 (1986) (holding that "a tortious breach of contract styled as a misrepresentation in the *inducement* (before the contract is formally signed) does *not* fall outside of the court's Tucker Act jurisdiction" [emphasis in original] ).

11. The Court of Appeals for the Ninth Circuit has stated:

claim's basis in contract is unmistakable. This claim arises from the allegation that defendant made a pre-contractual representation which plaintiffs believed was incorporated into the contract. The misrepresentation claim is entirely dependent on, and in fact evolves from the contract. Plaintiffs' claim is in substance a claim for breach of contract by misrepresentation and when the substance of the claim is in contract, subject matter jurisdiction exists under the Tucker Act even if tortious elements also exist. *E.g., H.H.O., Inc. v. United States*, 7 Cl.Ct. 703 (1985). Thus, we have jurisdiction here.

## B

Turning to the merits of the misrepresentation claim, plaintiffs allege that defendant knew that the second unit was illegal and intentionally misrepresented its status to induce them to buy the property. Am.Cplt. at 4, ¶ XV. Defendant argues that it did not misrepresent the status of the unit because defendant did not consider the term "nonconforming" to have the specialized, local meaning that plaintiffs now allege. Def.Reply Br., at 11 n. 7.

In order for plaintiffs to survive defendant's motion for summary judgment, they must allege facts sufficient to support a finding on all four of the following elements: (1) that there was a misrepresentation; (2) that the misrepresentation was either fraudulent or material; (3) that it operated as an inducement to entering into the contract; and (4) that plaintiffs were justified in relying on the misrepresentation. Restatement (Second) of Contracts § 164 (1981).

Plaintiffs have failed to show any potential to prove at trial that defendant's representation of the second unit as non-conforming was in any way a misrepresentation. Because there is no possibility of a misrepresentation here, we need go no further. In

[J]urisdiction of tort claims in the district court is 'exclusive.' (28 U.S.C. § 1346(b)) Read literally, this might have the effect of depriving the Court of Claims of jurisdiction of what are essentially contract cases wherever it is possible to fashion a 'tort' out of a breach by the government of its contract. We think that no such result was intended.

We do not mean that no action will ever lie against the United States under the Tort Claims

the absence of any genuine issue of material fact, we find as a matter of law that defendant is entitled to judgment on the third count.

## V

Based on the foregoing, defendant's motion for summary judgment, filed June 1, 1993, is GRANTED. Accordingly, judgment shall be entered in favor of defendant.

Pursuant to RCFC 54(d) costs shall be allowed to the defendant ("the prevailing party").

Act if a suit could be maintained for a breach of a contract based upon the same facts. We only hold that where ... the action is essentially for breach of a contractual undertaking, and the liability, if any, depends wholly upon the government's alleged promise, the action must be under the Tucker Act, and cannot be under the Federal Tort Claims Act.
*Woodbury v. United States*, 313 F.2d 291, 296 (9th Cir.1963).